LEVIN T. PALMER *et al.*

*v.*

THE CITY OF DANVILLE.

156:30 L.R.A. 2?

*Filed at Springfield November 26, 1894.*

1. PUBLIC IMPROVEMENT—*special tax may be levied for lateral service-pipes.* An ordinance providing for the payment, by special tax, of the cost of putting in lateral sewer and water service-pipes for house connections on a street of a city, is not void, upon the ground that the putting in of such pipes is a private, and not a public, improvement.

2. Such connections are to be considered together as one improvement, in connection with the use of the mains, and, so considered, are so far beneficial to contiguous property that the ordinance will not be held void for lack or abuse of power.

3. SAME—*tax may be levied for connections with water-main of private company.* The fact that a water-main with which service-pipes are to be connected belongs to a private company, but maintained for the city's use under the ordinances, will not render the ordinance for the tax to pay for such pipes void, it being for the council to decide whether the city shall own or hire its water-mains. (BAILEY, J., dissenting.)

4. SAME—*unequal cost of sewer connections, owing to location of main.* The fact that in a proceeding to raise, by special tax, the cost of lateral sewer connections, the expense of making the connections

on one side of the street is less than on the other, because the main sewer is laid nearer that side, is not a ground for levying a higher tax on the more remote lots, being violative of the rule that benefit to the property is the basis of the power of special taxation.

5. SAME—*cost of service-pipes cannot be taxed against each lot severally.* An ordinance for a special tax, which has the effect of creating a taxing district, and which specially assesses the cost of each lateral service and sewer connection against the particular lot with which it is to connect, instead of apportioning the entire cost among the contiguous lots upon some rule of equality, is unlawful and void.

WRIT OF ERROR to the County Court of Vermilion county; the Hon. JOHN G. THOMPSON, Judge, presiding.

This was an application in the county court of Vermilion county for the confirmation of a special tax, levied by authority of the city council of the city of Danville, to pay the cost of providing and putting in sewer and water service-pipes for house connections with the main sewer and water pipes in Main street of that city. Sections 1, 2, 4 and 5 of the ordinance are the principal ones having any bearing on this case, and are as follows:

"Sec. 1. That Main street, from its intersection with Park street to the intersection thereof with Pine street, be provided with sewer and water connections, and be improved and prepared for paving the same in the following manner.

"Sec. 2. That there shall be laid on the foregoing part of said street, for each business house, residence and vacant lot along the line thereof, except where the same are already provided, the following service-pipes, to be respectively connected with the water-mains now laid on said streets, said sewer connections to be laid in accordance with the plans and specifications therefor prepared by George W. Warring, on file in the office of city clerk: For each of said business houses, residences and vacant lots on the north side of said street, a four-inch vitrified service sewer-pipe for house drainage, forty-four feet long; for each of said business houses, residences and

vacant lots on the north side of said street, except where the same are already provided, a five-eighths-inch lead service-pipe for water, fourteen feet long, with stop-cock and box at the north end thereof; for each said business houses, residences and vacant lots on the south side of said street, a four-inch vitrified service sewer-pipe for house drainage, ten feet long; for each of said business houses, residences and vacant lots on the south side of said street, except where the same are already provided, a five-eighths-inch lead service-pipe for water, forty-two feet long, with stop-cock and box at the south end thereof.

"Sec. 4. That the cost of excavating for said sewer and water-pipes, the connecting and laying of the same, and the setting of said boxes and stop-cocks for the water-pipes, and the cost of all the labor and material for the same, shall be paid for by special taxation of the cost of the same upon the respective tracts or parcels of real estate and property for which each of such pipes, stop-cocks and boxes are provided, and which abuts or fronts upon the same.

"Sec. 5. A special tax is hereby ordered to be assessed upon the respective tracts, pieces or parcels of real estate and property for which said sewer and water service-pipes, together with said stop-cocks and boxes, or any or either of them, shall be respectively provided, and which abuts upon said service-pipes, equal to the entire cost of furnishing and laying the same, which special tax shall be levied and collected in accordance with article 9 of an act of the General Assembly of the State of Illinois, entitled 'An act to provide for the incorporation of cities and villages,' approved April 10, 1872, in force July 1, 1872, and said special taxes shall also include the cost of all necessary court proceedings for assessing and collecting the same."

Under section 6 of the ordinance a committee was appointed "to make an estimate of said improvement, esti-

mating separately the cost of said sewer-pipe, the laying
and connecting the same, and the water service-pipes,
stop-cocks and boxes, and laying of the same, together
with the cost and expense of assessing and collecting the
said tax, and that they report their estimates, in writ-
ing," to the council. The ordinance also required the
engineer in charge of the construction of the sewers to
report to the city council the number of the said sewer
and water connections. The committee reported the cost
of the said several sewer and water service-pipes, and
the cost of assessing and collecting the tax therefor, as
follows :

| | |
|---|---:|
| For each sewer service-pipe on the south side of Main street | $12 00 |
| For assessing and collecting the same..................... | 60 |
| For each sewer service-pipe on the north side of street.... | 42 00 |
| For assessing and collecting the same..................... | 2 00 |
| For each water service-pipe and stop-cock and box on south side of Main street ...................................... | 17 07 |
| For assessing and collecting same......................... | 85 |
| For each water service-pipe, etc., on the north side of Main street............................................. | 7 69 |
| Cost of assessing and collecting same...................... | 38 |
| Total cost of 170 sewer service-pipes, etc.................. | 4641 00 |
| Total cost of 170 water service-pipes, etc.................. | 2209 83 |

The report was approved by the council, and this pro-
ceeding was instituted in the county court, by order of
the city council, for the appointment of commissioners
and for assessing and collecting the special tax, under
the statute relating to local improvements. The com-
missioners appointed by the county court made and re-
ported the assessment on the several lots and parcels of
land substantially as provided in the ordinance and in
the report of the committee. Plaintiffs in error filed
twelve objections to the confirmation of the assessment,
all of which, except three, were, on motion of counsel for
the city, stricken from the files and the assessment con-
firmed as made, except as to certain parcels of land of
two of the objectors, and as to them modified by reducing
the amount, and confirmed as modified.

The sewer in Main street with which the sewer service-pipes were to connect was laid along the south side of the street ten feet north of the south curb and forty-four feet south of the north curb. The water main was laid along the north side of the street. The center of the street was occupied by the street railway track. It was stipulated in the case by the parties "that the Danville Water Company is a private corporation, and that the water-main on Main street, with which said water connections were made, was the property of the said private corporation, and that said company maintains its mains, under ordinances giving it such a right, for the use of said city and the inhabitants thereof." Two of the objections stricken from the files were as follows:

"*Eighth*—That the city council of the said city has no power to levy a special tax upon the said real estate of the objectors, and collect the same for the proposed improvement, by virtue of or in accordance with article 9 of an act of the General Assembly of the State of Illinois, entitled 'An act to provide for the incorporation of cities and villages,' approved April 10, 1872, in force July 1, 1872."

"*Twelfth*—That the said ordinance embraces more than one improvement, is double, and that the said special tax sought to be levied by the said commissioners has not by the said commissioners been levied by any rate of equality upon the real estate situated on the said Main street, by or in proportion to frontage, value, area or otherwise, but has been unequally and unjustly levied."

D. D. EVANS, and E. R. E. KIMBROUGH, for plaintiffs in error:

The ordinance does not specify the nature, character, locality and description of the improvement, and is therefore, under the decisions of this court, void. *City of Sterling* v. *Galt*, 117 Ill. 20, and cases cited; *Hyde Park* v. *Spencer*, 118 id. 457, and cases cited.

The clause in section 2 of the ordinance, "except where the same are already provided," renders the ordinance void. (*Foss* v. *Chicago*, 56 Ill. 354; *Railroad Co.* v. *Chicago*, id. 454.) Who was to determine what parts of "the same are already provided?"

W. J. CALHOUN, for defendant in error :

What sewerage is necessary for the welfare of the city and health of its inhabitants is political, and to be determined by the legislative authority of the city, under its grant of power. *Bridge Co.* v. *People*, 125 Ill. 230.

In this case, it is objected that the water-mains in the streets belong to a private corporation. The record shows, however, that this corporation is a *quasi* public one. It constructed its mains in the streets under a license from the city, for the use of the city and its inhabitants. This gives every citizen a right to have the use of such mains, and to have the benefit of the water supply thereby given.

The description would enable a civil engineer to determine where and how the connections were to be laid. *Springfield* v. *Mathus*, 124 Ill. 88.

Each lot was assessed for its special connection, and the committee's estimate was made on that basis. It was not a matter for determination in the discretion of the committee, in any way affecting the amount of the special tax, as was true in *Foss* v. *Chicago*, 56 Ill. 354. While the improvement was a general one in one sense, in another it was several as to each lot.

In *Warren* v. *Chicago*, 118 Ill. 329, the counsel for the appellant took pretty much the same position in reference to some matters as do the counsel in this case. But the power to make the improvement was sustained by the court.

CARTER, J.: This writ of error is prosecuted to reverse the judgment of the county court of Vermilion county confirming a special tax levied to pay the cost of certain sewer and water service-pipes laid for house con-

nections with the sewer and water-mains in Main street, in the city of Danville. Numerous objections were filed and insisted on in the county court, and are renewed here by plaintiffs in error, but it will not be necessary to consider them all in the disposition of the case.

It is urged in objection, among other things, that the several water and sewer service-pipes were intended for the use of the individual lot owners, and that the public could have no access to, use of or interest in them whatever, and that, therefore, they did not constitute a local improvement, within the meaning of the law. We do not regard this objection as well taken. All of the several water and sewer connections must be considered together as one entire work or improvement, and when taken in connection with the use of the mains which had already been provided, a local improvement especially useful and beneficial to the residents on the contiguous property, and generally useful and beneficial to the city, was provided for. At least the city council must have so regarded it in passing the ordinance, and we do not think there was any lack or abuse of power in the respect mentioned. *Warren* v. *City of Chicago*, 118 Ill. 329 ; *Louisville and Nashville Railroad Co.* v. *City of East St. Louis*, 134 id. 656 ; *City of Chicago* v. *Blair*, 149 id. 310, and cases cited.

It is also urged, that as the water-main mentioned in the ordinance belonged to a private company, the city had no control over it except by virtue of the police power and by virtue of rights reserved in granting the license to lay the main in the street, and that such reserved rights did not include the right in the city to make water connections for private individuals as a local improvement. It was stipulated in the court below between the parties that the water-main is maintained, under the ordinances of the city, for the use of the city and its inhabitants, and the question is presented whether the mere fact that this main belongs to a private com-

pany, though located in a public street and maintained for the use of the city and its inhabitants, under the provisions of an ordinance of the city, renders the ordinance and the proceedings under it in this case void. We do not think it does. The ordinance under which the water-main was laid and is maintained was not given in evidence, and we must presume, in the absence of any evidence to the contrary, that the city has preserved and guarded its own rights and those of its inhabitants in its contract with the water company. These water-pipe connections are a part of the entire improvement, and may be regarded as important in making the sewer and its connections more available and useful than they otherwise would be. In making this improvement so that it would be most useful and beneficial to the public and the property owners, the city had a large discretion, with the proper exercise of which the courts could not interfere. *Lightner* v. *City of Peoria*, 150 Ill. 80.

It may be conceded that to make the water-pipe connections available or beneficial, it was the duty of the city council to provide water-mains to convey water to them,—in other words, to make provision for a supply of water,—otherwise the connections would be useless, and would not be an improvement at all, of benefit to any one. (*Hutt* v. *City of Chicago*, 132 Ill. 352.) This duty the city has discharged, and doubtless in the manner that seemed best for itself, the property owners interested and the inhabitants generally, and whether it should lay the mains and furnish the water itself, or hire a private person or corporation to do so, is a question for the city council to decide, and not for the courts. It might be that if the contract with the water company were in the record, and the court could see that its terms and provisions were such as to make the ordinance providing for this improvement oppressive and unjust in levying this tax to make connections with the water-main, which would never be of benefit to the contiguous property, this court would

hold the ordinance invalid; but the record shows nothing more on this subject than that the water company owning the main maintains it, under ordinances giving it such right, for the use of the city and the inhabitants.

In *Holmes* v. *Village of Hyde Park*, 121 Ill. 128, followed by *Hunerberg* v. *Village of Hyde Park*, 130 id. 156, and *Leman* v. *City of Lake View*, 131 id. 388, it was decided that the owner of property specially assessed for the purpose of improving a street cannot be heard to urge as an objection to the assessment that the proposed street is located on private property and that the city has not acquired title thereto, and it was held that the assessment may be levied before the title to the proposed street has been acquired, by condemnation or otherwise. In *Leman* v. *City of Lake View, supra,* (p. 391,) this court said: "The corporate authorities of cities and villages may levy special assessments for the improvement of a proposed street before acquiring title to the soil, by condemnation or otherwise, and may afterward take the necessary steps to condemn the land and have the compensation and damages to be paid assessed, and that the owner of the property specially assessed for grading and paving such street cannot interpose the objection to the confirmation of such assessment that the city or village had not acquired title to the soil to be graded and paved." (See, also, *Village of Hyde Park* v. *Borden*, 94 Ill. 26.) These cases, though not precisely in point, lend force, by analogy, to the views here expressed.

It is next objected that the special tax was not "levied by any rate of equality upon the real estate situated on the said Main street by or in proportion to frontage, value, area or otherwise, but has been unequally and unjustly levied." Also, that the city had no power to levy the special tax to pay for said improvement, under article 9 of the act of 1872. The record shows that the street was fifty-four feet wide between the curbing; that the street railway track occupied the center; that the sewer-main

was laid along the south side, about ten feet from the curb, and the water-main along the north side of the street. These house connection-pipes extended from the respective mains each way across the street to the curbing, and no further, so that upon the south side of the street the sewer service-pipes were ten feet and the water service-pipes forty-two feet long, while on the north side the sewer-pipes were forty-four feet and the water-pipes fourteen feet long. The cost of putting in these sewer and water connections on the south side of the street, and of assessing and collecting the tax therefor and for which the assessment was confirmed, was $30.52 for each house or lot, while on the north side the amount was $50.07, so that a lot on the north side of the street, having the same frontage, area, value, and receiving the same benefits from the improvement as a lot on the south side, was assessed a much larger amount. This was done in accordance with the provisions of the ordinance, and the question is directly presented whether the city had the power to assess the cost of each lateral service-pipe against the lot with which it was intended to connect, instead of apportioning the entire cost of the improvement among the several lots and parcels of land contiguous to or abutting upon the improvement, upon some principle or rule of equality, such as the frontage, area or value of the respective lots.

Counsel for the city says that "this assessment was made upon each lot with reference only to the cost of the pipe leading thereto; each lot was assessed for its special connection, and the committee's estimate was made on that basis;" that "while the improvement was a general one in one sense, in another it was several as to each lot;" and insists that it would be unjust and unequal to require the property owner on the south side of the street, requiring only ten feet of pipe to connect with the sewer, to pay as much for this local improvement as the lot

owner on the north side of the street, requiring forty-four feet of pipe to connect his lot with the sewer.

It will be noticed that the ordinance provides that the special tax is to be levied and collected in accordance with article 9 of the act of 1872, which vests the corporate authorities of cities and villages "with power to make local improvements by special assessment or by special taxation, or both,. of contiguous property, or general taxation, or otherwise, as they shall, by ordinance, prescribe." This ordinance prescribed that this improvement should be made by special taxation, and directed that a special tax be assessed upon the respective tracts or pieces of land for which the service-pipes were to be respectively provided, and which abut upon such service-pipes, equal to the cost of furnishing and laying the same. The power conferred to levy this special tax is referable to the power of taxation, and must be strictly construed. By the ordinance the city created a district, composed of the property contiguous to the improvement, for the purpose of levying the special tax to make the improvement. (Cooley on Taxation, 143, 151, 152; *Lightner* v. *City of Peoria*, 150 Ill. 80; *Davis* v. *City of Litchfield*, 145 id. 313.) The power to levy special assessments or special taxation on property contiguous or adjacent to the improvement, to pay for its construction, rests on the benefits which it is considered will inure to such property by the making of the improvement. (*City of Bloomington* v. *Chicago and Alton Railroad Co.* 134 Ill. 451, and cases cited; *Louisville and Nashville Railroad Co.* v. *City of East St. Louis*, id. 656; *Kuehner et al.* v. *City of Freeport*, 143 id. 92; *Davis* v. *City of Litchfield*, 145 id. 313.) So clearly is this founded on just legal principles, and so generally understood, that these assessments or taxes are often called "benefits."

In the levy of special taxes to make local improvements under article 9 of our statute, while the question of benefits is one that must be addressed to the city council,

and the decision of the council is not generally open to review by the courts, but is final, yet it is clear, both upon principle and authority, that for unreasonableness, arbitrary abuse of power, or violation of the fundamental principles upon which the power of taxation rests, the validity of such an ordinance, as well as all proceedings under it, may be attacked in and passed upon by the courts. (Cooley on Taxation, 619, 622, and cases cited; *Craw et al.* v. *Village of Tolono*, 96 Ill. 255; *City of Bloomington* v. *Chicago and Alton Railroad Co.* 134 id. 451; *Louisville and Nashville Railroad Co.* v. *City of East St. Louis*, id. 656; *Davis et al.* v. *City of Litchfield*, 145 id. 313.)

In the case last cited an ordinance of the city of Litchfield was by this court declared invalid where it provided that the cost of the improvement—the paving of a street—should be apportioned and assessed against the abutting property according to frontage, *but the assessment against each lot was to be "only to the amount of the cost of the improvement in front of any such lot."* It was there said that the ordinance had the effect of creating a taxing district, composed of the property contiguous to the improvement, and that assessing each lot with the cost of paving the street in front of it was "not the imposition of a special tax upon contiguous property, but is an arbitrary imposition of the burden upon each lot of making the improvement in front of it," and that "it is of the essence of a tax that it shall be levied for a public purpose, and shall be uniform in respect of persons and property within the taxing district, whether that be the State, county, municipality or district thereof created for local improvement, and that it be laid according to some fixed rule of apportionment," and that "equality of the burden is of the very essence of the right." (See also 1 Desty on Taxation, 29; Dillon on Mun. Corp. 587.) "The district having been established by ordinance, the tax is to be imposed upon some rule of apportionment, which shall, in theory at least, conform to and be productive of uni-

formity in its levy." (*Davis* v. *Litchfield, supra.*) The ordinance, and proceedings under it, involved in the case at bar, contain the same vice for which the ordinance in the *Litchfield case* was declared void.

Should it be said that there was equality and uniformity in the levy of the tax as to property situated on the same side of the street, and that it would be unjust to make those situated nearer the sewer contribute to the expense of the connections of those situated on the other side of the street and farther away, it is a sufficient answer to say that the ordinance required the cost of connecting each lot to be assessed against such lot, and the mere circumstance that the location of the main sewer was such that it required less expense to make the connections on one side than on the other, could not be urged as a sufficient reason for violating the rule of equality and uniformity which should have been observed. Nor would there be any injustice in assessing the lots on the south at the same rate as on the north side, for, as we have seen, the levy of the tax must have been based on the benefits accruing to the property from the making of the improvement, and while the question of benefits was one for the city council to decide, it could not arbitrarily decide and ordain, in the same ordinance, that the property on the south side of the street was benefited in a greater degree by these lateral service-pipes than the property on the north side, simply because the main sewer was laid on the south side. Nor did the ordinance so declare. It provided for levying the cost on each lot of putting in the service-pipe connecting it with the sewer and water-mains, without regard to the proximity of the lot to the main and without regard to the length of pipe required to make the connection. If, for any reason, such as the length of the pipe, obstructions in the way of placing it, or other cause, one of these service-pipe connections cost more than another, the assessment must, under the ordinance, have been made accordingly.

The contention of defendant in error in support of the judgment, based on the alleged injustice of requiring the lot owner who needed only ten feet of pipe to connect his lot with the sewer to contribute to the cost of his opposite neighbor's connection which required forty-four feet, is an argument against the policy of constructing such an improvement by special taxation.   In *Holt et al.* v. *City of East St. Louis*, 150 Ill. 530, this court said :   "The object of special taxation is not to have each lot pay for the actual cost of what is done in front of it, but its proportionate share of the whole."   Judge Cooley, in his work on Taxation, (p. 646,) in speaking of the method of requiring each lot to pay for the improvement in front of it, says:  "Instead of establishing a taxing district, and apportioning the cost throughout it by some standard of benefit, actual or presumptive, the case of each individual lot fronting on the improvement has been taken by itself, and that lot has been assessed with the cost of the improvement along its front, or perhaps with one-half the cost, leaving the opposite lot to be assessed for the other half.   If such a regulation constitutes the apportionment of a tax, it must be supported, when properly ordered by or under the authority of the legislature.   But it has been denied, on what seems the most conclusive grounds, that this is permissible.   It is not legitimate taxation, because it is lacking in one of its indispensable elements.   It considers each lot by itself, compelling each to bear the burden of the improvement in front of it, without reference to any contribution to be made to the improvement by any other property, and it is, consequently, without any apportionment.   From accidental circumstances the major part of the cost of an important public work may be expended in front of a single lot, those circumstances not at all contributing to make the improvement more valuable to the lot thus specially burdened, perhaps even having the opposite consequence. But whatever might be the result in particular cases, the

fatal vice in the system is, that it provides for no taxing districts whatever.   *   *   *   In sidewalk cases a regulation of the kind has been held admissible, but it has been justified as a regulation of police, and is not supported on the taxing power exclusively."   He further says that such levies are not taxes, but forced contributions, and that a local tax for a local benefit should be distributed among and imposed upon all equally standing in a like relation.

In the view we take of this case the decision must be the same whether the principal question at issue involves a lack of municipal power or an abuse of power conferred. The city council could not provide for the construction of this improvement by special taxation, and then ignore the very principle on which such taxation is based. The work must be regarded as an entirety, and its cost apportioned and assessed, on some principle of equality and uniformity, on all of the contiguous property—that is, on all the lots and parcels of land in the taxing district. *St. John* v. *City of East St. Louis,* 136 Ill. 207, and cases cited.

But it is urged that the general law for the incorporation of cities and villages confers power on the city "to construct and keep in repair culverts, drains, sewers and cesspools, and to regulate the use thereof," and in addition, that the city has general police powers, which enable it to do all acts necessary for the preservation and maintenance of the public health. These general powers cannot, however, be carried into effect by means of special taxation.   In *City of Chicago* v. *Law et al.* 144 Ill. 569, it was held the city had no power to raise money, by special assessment, to enable it to carry into effect its general powers enumerated in the municipal code, and that the power of taxation by special assessment cannot be exercised by a city unless it has been expressly conferred by the legislature.   No one will, we presume, contend that the legislature has conferred authority on the city to enforce its general police powers by special taxation or

by special assessment. If it be said that the city may compel the lot owner, at his own expense, to construct sidewalks in front of his premises, and thus a local improvement may be constructed, and the cost so apportioned that each property owner must pay for the sidewalk in front of his lot, the reply is, that express authority is by statute conferred on cities and villages to cause sidewalks to be so constructed. (1 Starr & Cur. 541, 542.) We have not been referred to any provision of the statute, and we know of none, vesting power in cities or villages to cause sewers to be laid or constructed, and the cost of constructing the same in front of each lot arbitrarily imposed on such lot or its owner, without regard to frontage, area or value.

The views here expressed are not in conflict with the decision of this court in *White* v. *People ex rel.* 94 Ill. 604. There the statute expressly authorizing cities to compel lot owners to construct sidewalks in front of their lots was quoted, and the constitutional and statutory provisions relating to the making of local improvements by special assessments, or by special taxation of contiguous property, or otherwise, were referred to, and it was held that the city of Bloomington had the power to assess each lot with the whole cost of constructing the sidewalk in front of such lot,—in other words, the statute expressly conferring this power was held constitutional. Whether the legislature may or not, under the general police power or the power relating to local improvements, vest the corporate authorities of cities and villages with power to require, by ordinance, that each lot shall be connected by service-pipes with the sewer and water-mains in front of it, and that the entire cost of such connection shall be assessed against such lot, it is not now necessary to decide; but it seems clear that such power has not been conferred by the statute under which this ordinance was passed and the improvement ordered and made.

Our attention is called to *Warren* v. *City of Chicago*, 118 Ill. 329, as an authority in support of the validity of the ordinance in question. In that case a special assessment was levied on each lot to pay the cost of the service-pipe put in to connect it with the water-main. The assessment on lots on one side of the street was more than on the other, but as the appellant who objected to the assessment owned an equal number of lots on each side of the street, the question here considered was immaterial to him, and apparently was not raised. But the judgment of confirmation was reversed on the ground that the ordinance unjustly discriminated against the appellant by arbitrarily dividing his lots so that he was required to pay for putting in a greater number of service-pipes, in proportion to frontage, than the other property owners. There is no conflict between the decision in that case and the views here expressed.

The county court erred in striking from the files objections 8 and 12, and in not sustaining the same. The judgment of the county court is reversed.

*Judgment reversed.*

BAILEY, J. (separate opinion): I concur with the majority of the court in the reversal of the judgment of the court below and in the reasons upon which that reversal is placed, but I am not prepared to hold that the laying of the connections with the water-main in question is a local improvement for which the city is authorized to levy a special tax. It is conceded that the water-mains are the property of a private corporation, and are controlled and operated by that corporation, and the record, as I read it, furnishes no evidence, either direct or presumptive, that it is within the intention or contemplation of the city to acquire title thereto. The authorities cited in the opinion of the court which hold that, in laying out and opening a public street, assessments to pay the cost of the improvement may properly be made before the city

has obtained title to the land to be used as a street, do not seem to me to have any application. In all those cases the acquisition by the city of title to the land to be condemned for street purposes was in immediate contemplation, and it was therefore a matter of indifference whether the assessments to pay the cost of the improvement preceded or followed the condemnation of the land. But here there is nothing in the record having the least tendency to show that the city contemplates acquiring title to the water-mains, by condemnation or otherwise, and I can not assent to the proposition that property holders may be taxed to pay for an improvement which, when made, becomes only an adjunct or appurtenance of the private property of a private corporation, the enjoyment of which must always be controlled by and be subject to the will or caprice of such corporation.