## Shiloh Street.    Appeal of John C. McCormick et al.

[Marked to be reported.]

*Municipalities—Change of grade—Acceptance—Ratification of unauthorized acts of agents.*

A municipal corporation may ratify the unauthorized acts and contracts of its agents or officers which are within the corporate power.

Where a change of grade of a street is made by the officers of a municipality without authority of ordinance, councils may, by subsequent ratification, validate and adopt the unauthorized act.

In such a case where viewers are appointed to assess benefits occasioned by the work, and the report of the viewers is confirmed at the instance of the city, which accepts the work, and issues a scire facias to recover the assessments, the ratification of the unauthorized act is complete.

Submitted on paper-books Oct. 23, 1894. Appeal, No. 81, Oct. T., 1894, by property owners, from order of C. P. No. 2, Allegheny Co., July T., 1891, No. 497, dismissing exceptions to report of viewers. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to report of viewers.

Appellants, in their history of the case, state that the appeal is from a final decree confirming the viewers' report in proceedings under the so-called curative act of May 16, 1891.

The petition of the city of Pittsburg for viewers upon the grading and paving of Shiloh street, was filed shortly after the passage of the above act, and the court having appointed viewers, they proceeded to view and assess, and made report of their finding to the court Nov. 27, 1891. To their report exceptions were filed, which, after argument, were dismissed by the lower court; but upon an appeal being taken, the decree was reversed by the Supreme Court at No. 124, Oct. T., 1892: 152 Pa. 136.

On Feb. 18, 1893, upon motion of the city attorney, the report of viewers was ordered to be recommitted to the board —its members being the same as originally appointed—" with directions to proceed with a re-assessment of the damages, costs, expenses and benefits of said improvement, in accordance with the act of May 16, 1891, relating to and regulating the same, and in accordance with the opinion of the Supreme Court upon the said exceptions," etc.

The viewers reported in part as follows :

" It appeared before your viewers, and was not questioned or contradicted, and the viewers find as a fact that said improvement cost the sum of $10,285.35, and embraced and consisted of

| | | |
|---|---|---|
| Grading | . . . . . | 5,686 cubic yards. |
| Paving | . . . 2,627 square yards, | irregular block. |
| Curbing | . . . . . . | 988 lineal feet. |
| Crossing | . . . . . | 1,992 square feet." |

After reporting the cost of the different items, etc., the report continued :

" The sole and only serious point of contention made by any of the parties in interest and their counsel was that after the grade was established in the year 1889, and some time during the progress of the work the city engineer made a change in said grade without authority of councils and the consent of the property owners, and that this change increased the damage done and lessened the benefits.

" The said viewers find and report that the change of grade from the grade of said street as established by the ordinance of March 16, 1888, was necessary to make a junction or connection with Grandview avenue, and that the work of grading said Shiloh street had been partly done under the ordinance of 1884, and before the grade of Grandview avenue was established,

and that the change involved an additional cost of perhaps a thousand dollars, but the general and decided benefit of said change to the entire street was fully equal to the additional cost and damage, and that by reason of such change, (against which there was no objection or remonstrance) the properties along the line thereof were benefited to the extent of any and all damage which may have been caused by said change. . . . .

" The total amount of damages, costs and expenses of said improvement they find from the evidence submitted to them and from inspection of the improvement, diligent inquiry and all the information they have been able to obtain on the subject, to be $13,124.61.

" This amount is exclusive of all the costs of these proceedings, including advertisements, handbills and costs of service, and from the evidence submitted to them, as well as from inspection aforesaid, diligent inquiry concerning its value and all the information they have been able to obtain upon the subject, they are of the opinion, and so find and report, that said total amount is not in excess of the worth and value of said improvement at the time of its completion.

" The costs and expenses of said improvement exclusive of the damages allowed amount to $10,285.35, and they are of opinion and so find from an inspection of the improvement and diligent inquiry concerning its value, that said sum of money was a fair and reasonable price for said improvement, at the time the contract for the same was let and the improvement made.

" The damages, costs and expenses of the improvement, the properties in the neighborhood peculiarly benefited thereby, the names of the owners or reputed owners of each parcel, the amount of damages allowed in each case, the amount of benefits assessed against each property, and the amount of damages, costs and expenses not assessed upon property peculiarly benefited thereby, they find and report as follows, to wit: . . . ."

Appellants were assessed for benefits. They thereupon filed exceptions as follows:

" 1. The engineers, officers, and agents of said city, materially altered, changed and modified the grade of said street after the said contract had been awarded, and much work thereunder had been performed; said change involved much additional expense and was made without the solicitation, authorization or consent of these exceptants.

" 2. The said viewers' report fails to exhibit the character or amount of this said additional work, or the cost of the same.

⌐ " 3. The exceptants are wrongfully and illegally charged with the additional cost and expense growing out of the said change of grade."

The court, without filing an opinion, dismissed the exceptions and confirmed the report.

*Error assigned* was above order, quoting it.

*Charles L. Powers,* for appellants.— An ordinance of city councils having been passed providing for the grading, paving, and curbing of a street, the law implies an obligation or agreement on the part of each of the said owners of real estate, situate within the limits, to pay his proper ratable proportion of the cost thereof.   But a condition, as it were, of the said obligation is, that the said work shall be executed according to the established grade.

After said contract had been awarded and work performed thereunder, such a condition—if it may be so termed—of the said obligation is, we contend, unalterable, save by the formal enactment of an ordinance of city councils ; and, even then, without the effect of imposing upon such owner any additional material burden or expense.

*Wm. C. Moreland* and *Thos. D. Carnahan,* for appellee.— A municipal corporation may ratify the unauthorized acts and contracts of its agents or officers which are within the corporate powers, but not otherwise : 1 Dil. Mun. Corp. 460, § 463 ; Mfg. Co. v. Allentown, 153 Pa. 319 ; City v. Hays, 93 Pa. 72.

Where there is a grade already established by ordinance and the engineer disregards it and adopts another, the city may repudiate the act of the engineer and avoid the contract.   If, however, the city adopts such irregular grade and accepts the work no third person can intervene to avoid the contract : McKnight v. Pittsburg, 91 Pa. 273.

OPINION BY MR. JUSTICE GREEN, Jan. 7, 1895 :

The viewers in their report found specifically that the change of grade from the grade established by the ordinance of March 16, 1888, was necessary to make a connection with Grandview avenue, and that the grading of Shiloh street had been partly

done under the ordinance of 1884, and before the grade of Grand-view avenue was established.   They also found that the change involved an additional cost of about a thousand dollars, but that the benefit of the change was fully equal to the additional cost and damage and that the properties along the line of the street were benefited to the extent of any and all damage which may have been caused by the change.   They also found that the total amount of damages, costs and expenses of the im-' provement was $13,126.61, and that said total amount is not in excess of the worth and value of the improvement.   They then ascertained and reported the damages sustained by the owners and the benefits conferred by the improvement, and fixed and reported the amounts to be paid by the owners who were benefited.

The only real question now in dispute under the exceptions is the power of councils to make the change of grade without a special ordinance to that effect.   The exceptants claim that this change could not be made without a special ordinance to that effect.   The power of the councils to change the grade by means of a special ordinance is not controverted.   But it is very familiar doctrine that councils may by subsequent ratification validate and adopt an unauthorized act of their agents, officers and employees.

Thus in McKnight v. City of Pittsburg, 91 Pa. 273, which was a sci. fa. upon a municipal lien against a lot owner to enforce payment for work done in the grading of a street, and the defendant contended, as here, that the grade originally established had been changed by the city engineer without the authority of any ordinance, we held the defendant liable to pay because the work of the engineer in changing the grade was subsequently adopted by the city.   GORDON, J., delivering the opinion, said : " The difficulty however is found in the fact that between the time of the making of the ordinance and the letting of the contract a grade for Ridge street was adopted by the proper authorities.   Such being the case, the engineer exceeded his authority when he disregarded that grade and adopted a new one, and the city, at any time before the adoption by it of the work done by the contractor, might have repudiated the act of its engineer and avoided the contract.   But it could not do this after such adoption ; for as in the case of a private person, it having the power to contract, the power to adopt a contract made for its

benefit is necessarily involved in the original power. It is indeed but a question of power that we have to consider; that being determined all is determined. Hence, we repeat, the city having the undisputed power to establish grades and to make contracts for paving, the correlative power of adopting grades and contracts, made by its officers for its own benefit, necessarily follows."

We followed the same ruling in City v. Hays, 93 Pa. 72. We held there that although the agent of the city exceeded his authority, as the contract was one which the city might have authorized, it could waive the irregularity and adopt the contract after it was made.

The question of adoption is one exclusively for the city and with which the citizen has nothing to do. We said in the opinion, "But under the powers vested in the city councils, already, referred to, there is no doubt that they could have approved and accepted the work, and so have bound the city."

In Silsby Manfg. Co. v. Allentown, 153 Pa. 319, we held that councils of a municipality may adopt an unauthorized act done for the benefit of the city by one of the municipal officers and assume the debt so contracted.

In 1 Dillon on Municipal Corporations, sec. 463, it is said, " A municipal corporation may ratify the unauthorized acts and contracts of its agents or officers which are within the corporate powers but not otherwise."

There is no contention upon the correctness of the foregoing principles. The only remaining question therefore is upon the adoption and ratification of the work done upon the street after the change of grade. Upon that subject there is no possibility of controversy because the claim of the city is founded upon the work thus done. The report of the viewers sets out the fact of the change and describes the character, cost and expense of the work, and fixes the amount to be paid by each owner under the assessment for benefits occasioned by the work. That report was confirmed at the instance of the city and this action of scire facias is brought to recover for that very work. It is asserted by counsel for the city in his counter statement that the work was accepted by the city and this statement is not denied by the appellants.

We see no error in this record.

Judgment affirmed.