Submitted on briefs April 10, reversed July 31, 1928.

F. A. FISHER ET AL. *v.* CITY OF ASTORIA.

(269 Pac. 853.)

270

272

For appellant there was a brief over the names of, *Mr. H. K. Zimmerman* and *Messrs. G. C.* and *A. C. Fulton.*

For respondents there was a brief over the name of *Messrs. Norblad & Hesse.*

ROSSMAN, J.—There are six assignments of error. The first of these contends that the Circuit Court erred when it failed to sustain the defendant's demurrer to the complaint. We shall now examine this contention.

■ While the plaintiffs' brief lays stress upon the fact that the resolution of the city council provides for ornamental light posts, yet we feel that this feature of the posts does not present a proper field for our investigation. There is no allegation in the complaint that the ornamental feature of the posts has increased the cost of installing this system of illumination. Ordinarily, such details of the improvement rests largely in the discretion of the municipal officers; nothing before us indicates that this discretion has been abused: *Ankeny* v. *City of Spokane,* 92 Wash. 549 (159 Pac. 806, L. R. A. 1917A, 1093).

■ The city contends that placing a lighting system in a district of the municipality constitutes a local improvement, and that the property in the dis-

trict may properly be assessed to pay for the benefit thus conferred; the plaintiffs take the opposite position. Based upon the information contained in the complaint, we assume that the proposed lighting system eliminates the cedar poles generally employed in Oregon cities for the purpose of holding in suspense arc-lights, and in lieu of this method substitutes metal posts of an attractive appearance and lamps of great brilliance. Since the resolution specifies an up-to-date system, we assume that the wires which will convey the electric current to the lamps will be underground. It is common knowledge that many business men and property owners believe that such a lighting system renders the street more attractive to the retail trade and thus enhances values. Before the expense of installing an improvement can be assessed against the property in a district, it is essential that the improvement should confer a substantial benefit upon the property within the district. It may incidentally benefit the entire city; that wholesome effect will not destroy its use as the foundation for a local assessment, provided it brings to the proposed district a benefit substantially more intense than it yields to the rest of the municipality, or, in the event its beneficial effect upon the local property is peculiar to that district: Page & Jones, Taxation by Assessment, § 287. In *City of Waukegan* v. *DeWolf,* 258 Ill. 374 (101 N. E. 532, Ann. Cas. 1914B, 538, 45 L. R. A. (N. S.) 918), the Illinois court expressed the rule thus: ·

"These and other cases demonstrate that the question whether an improvement is a local one, within the meaning of the Constitution and statute, does not depend upon the fact that there are incidental or indirect public benefits for which an equitable

portion of the costs may be assessed to the municipality, as contemplated by the statute, and is not determined by the fact that some property in the municipality is benefited to a greater degree than other property, but does depend upon the nature of the improvement and whether the substantial benefits to be derived are local or general in their nature. If its purpose and effect are to improve a locality, it is a local improvement, although there is incidental benefit to the public; but if the primary purpose and effect are to benefit the public it is not a local improvement, although it may incidentally benefit property in a particular locality.''

In the foregoing Illinois case it was held that the water-mains and fire hydrants installed for fire protection could not be charged against the property within the district as a local improvement; the court observed that such mains and hydrants were primarily installed for the protection of the municipality against fire, and that the benefit which came to the adjoining property was only incidental. But in *Palmer* v. *City of Danville,* 154 Ill. 156 (38 N. E. 1067), the same court held that water and sewer pipes connecting all the buildings in a street with the main pipes constitutes a local improvement.

In *Putnam* v. *City of Grand Rapids,* 58 Mich. 416 (25 N. W. 330), submitted to us by the plaintiffs, the court had before it an improvement consisting of the erection of towers at the top of which lights were suspended for the purpose of illuminating the city; it was held that the cost of erecting these towers could not be charged against the property in the district as a local improvement. The decision does not describe the towers; perhaps they failed to confer a benefit upon the local property.

In *Ankney* v. *City of Spokane, supra,* the court held that while a lighting system of the type which the defendant installed may benefit the city at large, its greatest benefit was to the locality where it was situated, and that, therefore, both the cost of construction and also the cost of maintenance may be charged to the property in the improvement district to the extent of the benefits received.

In *Ewart* v. *Village of Western Springs,* 180 Ill. 318 (54 N. E. 478), the court held that the power-house and generator plant of an electric light system are the subject matter for general taxation, but that the poles, electric conductors, lamps and appliances connected therewith peculiarly benefit the local district and that their cost may be met by special assessment. To similar effect, see *Wicks* v. *Salt Lake City,* 60 Utah, 265 (208 Pac. 538).

We understand that an ornamental lighting system is intended to add character to the particular locality by eliminating the wooden posts and substituting for them permanent posts artistically designed. By eliminating overhead wires it yields to the street a more spacious appearance, and by employing a lamp of greater brilliancy the street is better illuminated. Due to these circumstances, we believe that it confers a benefit upon the adjacent district which makes it the proper subject matter of local assessment. But the plaintiffs argue that those portions of the city charter which confer authority to provide for a city lighting plant contemplate that the installation of lighting systems are not local improvements. We have carefully studied the subdivisions of the charter which the plaintiffs have especially called to our attention; we find nothing in them

inconsistent with an authority to charge local districts with benefits which are peculiarly conferred upon them by the improvement. The plaintiffs argue that since the electrical current is supplied by a private plant, the poles, wires and lamps comprising the proposed improvement would thus become the distributing and illuminating agency for electricity privately manufactured; they contend that this destroys the legality of the assessments. They cite no authorities to sustain their contention; we are aware of no reason in support of their position. The public service of the proposed improvement and its peculiar benefit to the district seem to be the controlling features, even though the electrical current is provided by a private generator plant: *Palmer* v. *City of Danville, supra,* and *Park* v. *Pacific Fire Extinguisher Co.,* 37 Cal. App. 112 (173 Pac. 615), are directly opposed to the contentions of the plaintiffs. We conclude that the mere fact that the electrical current was not generated by the city does not defeat the validity of a proposed improvement.

We come now to the problem, does the charter confer upon the city authority to install such an improvement and assess the adjoining property for the cost thereof. Unless the authority is conferred in the charter the city does not possess it, for a charter is a grant of authority and not a limitation upon it: Dillon, Municipal Corporations (5 ed.), § 237; McQuillin, Municipal Corporations, §§ 320, 321. We have carefully read all portions of the charter which might possibly confer the alleged authority, and find that Section 72 is the only subdivision which is directly applicable. Portions of the charter which confer authority only to install improvements are not sufficient because the city desires to tax the cost of

the improvement to the property in the district. A grant of power to improve a street does not carry with it power to assess the expenses thereof to the adjacent property: *Ivanhoe* v. *Enterprise,* 29 Or. 245 (45 Pac. 771, 35 L. R. A. 58); Page & Jones, Taxation by Assessment, § 775. Hence we are confined in our search to those portions of the charter which confer both power of improvement and power of assessment. We shall examine Section 72. In our endeavors to ascertain whether the charter confers the desired authority, we must bear in mind that assessment proceedings are proceedings *in invitum,* and may ultimately result in taking from the owner his property. Such being their nature, this court, in accord with the general rule, has held that such powers only are conferred as are clearly comprehended within the words of the act, or are included therein by necessary implication, and that any fair, reasonable doubt as to the existence of the power will be resolved against the municipality: *Corvallis* v. *Carlyle,* 10 Or. 139 (45 Am. Rep. 134); *Robertson* v. *Portland,* 77 Or. 121 (149 Pac. 545); *Richards* v. *Portland,* 121 Or. 340 (255 Pac. 326); Page & Jones, Taxation by Assessment, § 229. But with due regard of the danger of giving elasticity to the words which confer the power, the language of the act must nevertheless receive such a reasonable construction as will truly reflect the legislative purpose: *McNamara* v. *Estes,* 22 Iowa, 246, and the possession of the power being established, a generous measure of its exercise will be permitted to the end that it may effectuate its purpose: 28 Cyc. 265. These being the rules of construction, we shall now apply ourselves to our problem.

It will be noticed that Section 72 of the charter confers authority upon the city to "grade, pave, plank, gravel, curb, and otherwise improve and repair" the streets. The plaintiffs contend that under the familiar rule of *ejusdem generis*, the words "otherwise improve" mean construction work of a type similar to that designated by the specific words which preceded them. But Section 72 carries with it a dictionary of some of its words: it defines paving, and assigns to it a meaning beyond its ordinary significance. The definition carried in the act requires paving to include the construction of crosswalks, gutters and curbs. The act in defining the word "improve" clearly indicates that the legislature did not intend that the rule of *ejusdem generis* should be applied to this word, for it expanded its significance beyond the specific words which preceded it. Thus it defines "improve" as follows: it "includes the power and authority to improve the sidewalks and pavements and to determine and provide for everything convenient and necessary concerning such improvement." Such being the legislative fiat, we cannot apply the rule of *ejusdem generis* without disregarding the legislative intent. Hence, we must ignore that principle of construction and assign to the words "otherwise improve" their ordinary implication. It will be observed that after the authors of Section 72 had conferred authority to grade, pave, plank, gravel and curb streets, they evidently anticipated that circumstances might present themselves which would render it desirable to improve the streets in some other manner. They, therefore, conferred not only authority to do the foregoing, but also power to "otherwise improve"; in-

dicating thereby that they were conferring power to do something more than pave, grade, etc., the streets. It seems natural that the authors of the charter who saw fit to confer upon the city authority to construct such an expensive improvement as the paving of a street and authority to assess property the cost thereof would also desire that the city should possess authority to install any other improvement that might be necessary to adapt the street to the needs of traffic. Having rid ourselves of the rule of *ejusdem generis,* the problem presents itself whether the city could install an ornamental lighting system if it was possessed of no power other than that of improving the streets and providing all things convenient and necessary concerning them. A review of the solutions made by other courts of problems somewhat similar to ours may be of some help.

In *Murphy* v. *City of Peoria,* 119 Ill. 509 (9 N. E. 895), authority was conferred upon the city to charge by special assessment the adjoining property with the expenses of any improvement of the streets. The city proposed to grade and gravel portions of a street and leave an area twenty-four feet in width in the center which was to be converted into a parkway. It was contended that the authority to assess the expenses of the improvement of the street did not confer authority to assess the costs of converting the central area into a parkway. The court held otherwise.

In *Thompson* v. *Highland Park,* 187 Ill. 265 (58 N. E. 328), the court construed the words "otherwise improving" as including a proposed parkway between two strips of pavement in the street. The proposed parkway was to be constructed by treating the

central area with a loam soil and planting trees fifty feet distant from one another.

In *Wilkins* v. *Mayor etc. of Savannah,* 152 Ga. 638 (111 S. E. 42), it was held that authority to renew a pavement included authority to repave.

In *McNamara* v. *Estes, supra,* the court held that authority to assess property for the expense of macadamizing a street, included authority to assess the expense of "trimming, curbing and guttering."

In *City of LaFayette* v. *Doucet,* 148 La. 166 (86 South. 724), it was held that authority to pave a sidewalk includes authority to grade, curb and drain the sidewalk.

In *Morse* v. *City of West-Port,* 110 Mo. 502 (19 S. W. 831), it was held that authority to tax abutting property for the cost of building a street includes authority to tax the property for paving the street.

In *Mardis* v. *McCarthy,* 162 Cal. 94 (121 Pac. 389), it was held that authority to construct a tunnel included the authority to lay and pave sidewalks within the tunnel and change the grades of streets necessitated by the construction of the tunnel. We are aware of the fact that most of the foregoing cases merely determined what powers were incidental to the main authority that was conferred. Nevertheless, we believe that they are somewhat helpful in determining the meaning intended by the authors of Section 72, when they conferred authority upon the city to otherwise improve the streets and determine and provide for everything convenient and necessary concerning the improvement. It is well recognized that at night-time it is necessary to illuminate the streets so as to facilitate their usefulness for travel. A street which is in the business section of a city and

is frequented by many people, is rendered safe when it is well illuminated. We conclude that the installation of a lighting system consisting of the necessary standards, lamps, wiring and other appurtenances is an improvement which the city was authorized to install, and assess the adjoining property to pay the expense thereof, under Section 72 of the defendant's charter.

■ But in the event that we are mistaken in holding that the words previously quoted conferred authority to install street-lighting systems and assess property for the costs of the same, nevertheless such authority was conferred upon the city by an amendment of its charter at an election held May 3, 1926. At this election Section 92 of the charter was amended so as to confer power to improve the streets "by constructing thereon street-lighting systems, both ornamental and otherwise, and for the purpose of defraying the expense thereof, may divide the city into special assessment districts." The amendment further provides:

"In any and all cases in which the Common Council has heretofore constructed street lighting systems or improvements, said Common Council shall have the power and authority to create special assessment districts for the purpose of defraying the costs and expenses of said street lighting systems or improvements heretofore constructed and to assess the real property therein benefited by said improvement. The manner of the creation of said special assessment districts for such street lighting systems which have been heretofore constructed shall be the manner provided in Section 80 of this charter for the making of a reassessment upon the lots, blocks or parcels of land which have been benefited by an improvement in any case wherein an assessment has been set aside, annulled, declared or rendered void, or its enforce-

ment refused or enjoined by any court. The assessments therefor shall be made in the same manner in which such reassessments are made under the provisions of Section 80 of this charter; and the persons owning property assessed therefor shall have the same right of appeal to the Circuit Court of the State of Oregon, for the County of Clatsop, and any and all other rights, as are provided for under said Section 80 of this charter.''

The plaintiffs, however, contend that when' the above act is applied to an improvement which was installed prior to the amendment the reassessment provision acts retroactively and is in conflict with Article I, subdivision 21, of the Oregon Constitution, which provides: ''No *ex post facto* law * * shall ever be passed * * ,'' and rely upon *Holliday et al.* v. *City of Atlanta,* 96 Ga. 415 (23 S. E. 406), and *Evans et al.* v. *City of Denver,* 26 Colo. 193 (57 Pac. 696). *Ex post facto* laws are criminal in nature as distinguished from acts which affect property rights. This was well developed by Mr. Justice Chase in the leading case of *Calder* v. *Bull,* 3 Dall. 386 (1 L. Ed. 648). See, also, 12 C. J., Constitutional Law, § 805. The fact that the act is retroactive in nature will not defeat the validity of the reassessment, because our Constitution contains no inhibition against retroactive legislation. As was stated by Mr. Justice Chase in the decision previously referred to, ''every *ex post facto* law must necessarily be retrospective, but every retrospective law is not an *ex post facto* law.'' Our Constitution prohibits only the former and does not mention the latter. In *Holliday* v. *City of Atlanta, supra,* and *Evans* v. *City of Denver, supra,* the reassessments failed due to the fact that they were retrospective; the Constitution of both states pro-

hibited that type of legislation. In Oregon reassessments have been upheld even though they operated retroactively: *Kadderly* v. *Portland,* 44 Or. 118 (74 Pac. 710, 75 Pac. 222); *Brown* v. *Silverton,* 97 Or. 441 (190 Pac. 971).

■ But the plaintiffs, proceeding with their attack upon the validity of the reassessment, argue that the amendment contemplates that a reassessment can be founded only upon improvements installed at a time when the city was possessed of authority to construct the improvement. The theory of law upon which the power of assessment and reassessment is founded is that when an improvement has conferred a peculiar benefit upon property, an obligation founded upon principles of economics and morals charges the property with a duty to contribute towards the costs of construction an amount equal to the benefits conferred: *Beezley* v. *City of Astoria,* decided by this court July 11, 1928; McQuillin, Municipal Corporations (2 ed.), § 2281. This obligation of a purely economic or moral character is unenforceable until the exercise of the assessment power converts it into a jural one. Since the improvement was unauthorized by the charter, if we so assume, the assessment statute alone could not convert the moral obligation into an enforceable one. Nevertheless the property derived a benefit and the unenforceable debt arose out of this benefit. Thereupon the amendment to the charter conferred upon the city the missing power and further provided that the council should have the power to assess property for the expense of installing lighting systems previously constructed. The courts have uniformly upheld reassessments when the original assessment was in violation of statutory

provisions (Page & Jones, Taxation by Assessment, § 962), and even when the original assessment statute was unconstitutional: Page & Jones, Taxation by Assessment, § 961. See, also, *Brown* v. *Silverton*, 97 Or. 441 (190 Pac. 971). Such being the condition of the law, we cannot understand why a reassessment should be denied for the sole reason that the improvement was constructed at a time when the city lacked the power of installing it; providing the city in good faith believed it possessed the charter authority, and provided further the appropriate authority was later conferred together with power to assess for improvements previously constructed. In McQuillin, Municipal Corporations (2 ed.), Section 2173, the writer cites a number of instances in which assessments have been allowed for improvements already installed, and states the general rule thus:

"Laws permit assessments for improvements already made, but in providing therefor it has been ruled in Illinois enough must be set out in the ordinance to indicate the general history of the improvement, and that the work had already been done in good faith under a former insufficient ordinance. Reassessments for improvements made are commonly allowed under specified restrictions, e. g., where the original assessment was unenforceable by reason of error or irregularity."

This court has expressed itself to similar effect. Thus Mr. Justice BURNETT, speaking on behalf of the court in *Murray* v. *LaGrande*, 76 Or. 598 (149 Pac. 1019), said:

"It is admittedly competent for the legislative power to provide one or more methods, concurrent or successive in their operation, for the purpose of collecting assessments designated to cover the cost of improvements yet to be made, or already made, either

of which methods a municipality may pursue in the transaction of such affairs.''

The Supreme Court of our sister state to the north has expressed itself to the effect that an assessment may be levied for an improvement installed at a time when the city lacked the charter power to construct that type of an improvement. Thus in *Eggerth* v. *Spokane,* 91 Wash. 221 (157 Pac. 859), the court held:

"But the respondents argue that the limits of the first district being defined by § 13 of the act of 1911, and the total valuation of the property in that district being only $58,493, the limit of the power not only to assess, but to reassess, is fifty per cent of that valuation, or $29,246. This conclusion is based upon the assertion that the power of the city to reassess is dependent upon the fact as to whether or not it had the power to order the improvement and make the assessment in the first instance. This, of course, thus broadly stated, is not the law and never was. The legislature can authorize a reassessment even where the work was ordered and done without any initial jurisdiction or power in the city. *State ex rel. Homen* v. *Ballard,* 16 Wash. 418 (47 Pac. 970); *Frederick* v. *Seattle,* 13 Wash. 428 (43 Pac. 364).''

In *Nichols* v. *City of Spokane,* 91 Wash. 235 (157 Pac. 859, 863), the court held:

"The two cases cited have been only recently decided by this court, and the question is there fully discussed. Upon the authority of those cases, it must be held that the city had the power in the present case to make the reassessment under the provisions of the local improvement code, which was passed subsequent to the time when the improvement was made and the original assessment roll prepared.''

The two cases to which the court referred were *Eggerth* v. *Spokane, supra,* and *Kuehl* v. *Edmonds,*

91 Wash. 195 (157 Pac. 850). We believe that *In re Paving Snelling Ave.,* 155 Minn. 168 (193 N. W. 1151), *Cleveland* v. *Tripp,* 13 R. I. 50, and *Warren* v. *Street Commissioners,* 187 Mass. 290 (72 N. E. 1022), support the Washington court. Compare, also, *Boston Water Power Co.* v. *Boston,* 194 Mass. 571 (80 N. E. 598).

In *Wingate* v. *Astoria,* 39 Or. 603 (65 Pac. 918), there is *dictum* to the effect that if the municipality lacked jurisdiction over the general subject when it made the improvement, the city could not assess property for the payment of the expense incurred. All of this is, however, relegated to a position of no consequence so far as the present suit is concerned, because one section of the charter confers upon the city authority to provide the city with electric light plants, and another section of the charter confers authority to purchase and maintain one or more electric light plants and issue bonds so as to secure money with which to pay for the purchase. Thus at the time when the city installed the lighting equipment which constitutes the subject matter of this suit, it was possessed of charter power to do that very thing, and pay for it by general taxation. It was also possessed of authority to install an electric light plant and secure the money for its payment by a general bond issue. The only power which it lacked therefor, if we are willing to make this concession, is the power to do this thing and secure the necessary funds by local assessment. As we have already seen, power to assess may be conferred retroactively.

No charge is made that under the city's general power of taxation the plaintiffs have already contributed in part towards the cost of this improvement.

The situation before us is dissimilar from *Labusky* v. *City of Cle Elum,* 124 Wash. 78 (213 Pac. 474). There the statute required the consent of the owners of 60 per cent of the lineage footage of the district before the improvement could be initiated. The council of the city proceeded to install the improvement in the absence of this necessary consent. Due to this circumstance the Superior Court held the assessment illegal. Thereupon the council levied a reassessment. Upon a new suit by the property owners the court held the reassessment statute was never intended to remedy such a defect, and canceled the reassessment. In that case there was no ratification of the legal act by the sovereign power. In our case the city did not lack charter power to construct the improvement. It lacked, however, if we so concede, the power to assess locally for lighting installations. This necessary power was promptly forthcoming when its absence was discovered. We believe that this cured the defect and that when the city, pursuant to the new grant, levied the reassessment its action in so doing was lawful. Thus Mr. Justice FIELDS, in *New Orleans* v. *Clark,* 95 U. S. 644 (24 L. Ed. 521), wrote:

"Assuming then, that the bonds were invalid for the omission stated, they still represented an equitable claim against the city. They were issued for work done in its interest, of a nature which the city required for the convenience of its citizens, and which its charter authorized. It was, therefore, competent for the legislature to interfere and impose the payment of the claims upon the city. The books are full of cases where claims, just in themselves, but which, from some irregularity or omission in the proceedings by which they were created, could not be enforced in the courts of law, have been thus

recognized and their payment secured. The power of the legislature to require the payment of a claim for which an equivalent has been received, and from the payment of which the city can only escape on technical grounds, would seem to be clear. Instances will readily occur to every one, where great wrong and injustice would be done if provision could not be made for claims of this character.''

And see generally, 4 McQuillin, Municipal Corporations, § 1894, and McQuillin, Municipal Corporations (2 ed.), § 744. See, also, *Re Shiloh Street,* 165 Pa. 386 (30 Atl. 986, 44 Am. St. Rep. 671).

This situation is dissimilar from the Maryland case commented upon in Dillon on Municipal Corporations (5 ed.), Section 127, where the legislature endeavored to ratify the assessment. The amendment before us merely conferred authority to assess for the lighting equipment already installed, and required the city to give the same notice and follow the same procedure as in cases where the improvement was installed at a time when the city possessed the necessary power. Thus all rights of the property owners were conserved. See Dillon, Municipal Corporations (5 ed.), Section 1469.

It follows from the foregoing that the decree of the lower court must be reversed; the cause will be remanded with instructions to dismiss the complaint; costs to neither party.     REVERSED AND REMANDED.