# HALL, *Appellant,*
*v.*
# NORTHWEST OUTWARD BOUND SCHOOL, INC., *Respondent.*

(TC 74-4045, SC 24742)

572 P2d 1007

Raymond J. Conboy of Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland, argued the cause and filed briefs for appellant.

Richard Bryson, Eugene, argued the cause for respondent. With him on the brief were Calkins & Calkins and Bryson & Robert.

LINDE, J.

**LINDE, J.**

Plaintiff, as the personal representative of the estate of Lorene B. Swan, brought an action against defendant for damages for the wrongful death of Miss Swan in the course of a survival training program conducted by defendant. ORS 30.020. The trial resulted in a verdict for defendant upon instructions that submitted to the jury the defenses of contributory negligence and assumption of the risk. The issue on appeal is whether ORS 18.470 and 18.475,[1] which replaced these defenses with an apportionment of damages by comparative fault, could constitutionally be applied to govern defendant's liability for events that occurred before the section went into effect.

The chronology of events is as follows: Lorene Swan died on September 2, 1971. ORS 18.470 in its original form, enacted by the legislature earlier in 1971, went into effect on September 9, 1971. In 1975 the legislature revised this section and enacted ORS 18.475. Or Laws 1975, ch 599. The new act, which became effective on September 13, 1975, expressly "governs all actions tried subsequent to its effective date." *Id.* §6. Plaintiff's action, first initiated in 1974, came to trial on October 5, 1976. Plaintiff requested the trial court to proceed in accordance with ORS 18.470 and 18.475, first, by moving to strike the defense of assumption of risk from defendant's answer and, later, by exceptions to the court's instructions on Miss Swan's contributory negligence and assumption of

---

[1] ORS 18.470:

Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for death or injury to person or property if the fault attributable to the person seeking recovery was not greater than the combined fault of the person or persons against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the person recovering. This section is not intended to create or abolish any defense.

ORS 18.475:

(1) The doctrine of last clear chance is abolished. (2) The doctrine of implied assumption of the risk is abolished.

risk. The court's rulings against plaintiff's position, apparently on the premise that the statute could not be applied "retroactively," are assigned as error on this appeal.

■ We find no constitutional obstacle to the application of ORS 18.470 and 18.475 to this litigation and therefore remand the case for a new trial.[2]

■ As a principle of statutory construction, the presumption against retroactivity has ancient roots. Its position in American law can be traced from the Roman Corpus Juris Civilis, carried into English law by Bracton in 1250 A.D., through Coke to the later judges who made it a maxim of English and subsequently of American decisions. Smead, *The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence,* 20 Minn L Rev 775 (1936). Along the way the maxim against retroactivity was raised to a general principle of natural law and its scope was expanded, mostly by Kent[3] and Story,[4] from denying the application of a law to cases preceding its enactment to denying its application to subsequent cases involving preenactment transactions. *Id.* at 782-789. But it remained a rule of construction. More is required than a general principle of justice to turn a judicial premise for interpreting legislation into a constitutional premise for invalidating legislation. It requires some showing that the principle was given constitutional stature by those who made the constitution or from time to time amended it. Accordingly, we examine how far this was done, first in the state

---

[2]Defendant briefed an objection to plaintiff's motion to strike as untimely, improper, and not prejudicial, but the case was argued in the recognition that defendant's position unavoidably rests on its constitutional claim. Since the instruction on contributory negligence alone requires reversal if ORS 18.470 applies, this opinion does not pursue the other issues.

[3] *See Dash v. Van Kleeck,* 7 Johns. 477 (NY 1811).

[4] *See Society for the Propagation of the Gospel v. Wheeler,* 22 F Cas 756 (CC NH 1814) (No. 13,156); *Terrett v. Taylor,* 13 US (9 Cranch) 43, 3 L Ed 650 (1815).

constitution, and if not there, then in the United States Constitution.

The objection to retroactive legislation appeared in the early state constitutions and the United States Constitution initially in the form of express prohibitions of "retrospective" or "ex post facto" laws. That these were directed against criminal laws appears from the earliest text of such a provision, in the Maryland Declaration of Rights, which declared:

> That retrospective laws, punishing facts committed before the existence of such laws, and by them only declared criminal, are oppressive, unjust, and incompatible with liberty; wherefore no *ex post facto* law ought to be made.[5]

The corresponding provision of the United States Constitution, found in article I, sections 9 and 10, was similarly limited to penal laws in *Calder v. Bull,* 3 US (3 Dall.) 386, 390, 1 L Ed 648, 650 (1798).[6] But a second limitation on legislative change of existing relationships, the guarantee against laws impairing the obligation of contracts, first placed in the Northwest Ordinance of 1787 and then in the Constitution,[7] was judicially extended to protect "vested rights" that could in some sense be ascribed to an agreement, a

---

[5]Maryland Declaration of Rights § XV (1776). Similar provisions were contained in the Delaware Declaration of Rights § 11 (1776) and the North Carolina Declaration of Rights § XXIV (1776). The Massachusetts Declaration of Rights § XXIV (1780) stated the same proposition without using the terms "retrospective" or "ex post facto." By contrast, New Hampshire expressly provided that no retrospective laws should be made "either for the decision of civil causes, or the punishment of offences." New Hampshire Bill of Rights § XXIII (1783). These early documents are reprinted in B. Schwartz, The Bill of Rights: A Documentary History (1971).

[6]The provisions against bills of attainder in the same sections also prohibit retroactivity insofar as bills of attainder involved legislative accusation or conviction of offenses not previously defined.

[7]Northwest Ordinance of 1787, 32 Jnls Cont Cong 1774-1789, at 334 (Library of Congress ed 1936); US Const art I, § 10: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts, . . . "

grant, or a charter.[8] Some courts invoked the "law of the land" or "due process" clauses against legislative impairment of "vested rights" in property. Smead, *supra,* 20 Minn L Rev at 794 n 59. The formula had the usual advantages of circularity, since rights were "vested" precisely to the extent tht they were not vulnerable to change.[9] However, the formula extended protection to interests that could be described as "proprietarian," *id.* at 787, 797; it did not prevent all application of new laws, different from those upon which past actions had been taken, to the consequences of those actions.

■ This court has followed the practice of assuming only prospective applicability of statutes that are silent on the point, including the first version of the statute involved here. *Joseph v. Lowery,* 261 Or 545, 495 P2d 273 (1972) and prior cases reviewed there. However, these cases have no relevance when the legislature thereafter made the statute, as revised in

---

[8] *See Calder v. Bull, supra; Fletcher v. Peck,* 10 US (6 Cranch) 87, 135, 3 L Ed 162 (1810); *Trustees of Dartmouth College v. Woodward,* 17 US (4 Wheat.) 518, 4 L Ed 629 (1819). But this expansion of the contract clause did not uniformly "federalize" all "vested rights." Compare this statement from *Watson v. Mercer,* 33 US (8 Pet.) 88, 110, 8 L Ed 876, 884 (1934):

> [I]t is clear that this court has no right to pronounce an act of the state legislature void, as contrary to the constitution of the United States, from the mere fact that it devests antecedent vested rights of property. The constitution of the United States does not prohibit the states from passing retrospective laws generally; but only ex post facto laws.

[9] At the time when this judicial evolution was taking place, John Austin stated:

> When it is said that the Legislature ought not to deprive parties of their vested rights; all that is meant is this: that the rights styled "vested" are *sacred* or *inviolable,* or are such as the parties ought not to be deprived of by the Legislature. Like a thousand other propositions which sound speciously to the ear, it is either purely identical and tells us nothing, or begs the question in issue.

2 Austin, Jurisprudence § 1138 (1874), *as quoted in* Smith, *Retroactive Laws and Vested Rights,* 6 Tex L Rev 409 n 2 (1928). The Smith article, which begins in 5 Tex L Rev 299 (1927), generally reviews the logical problems with the concept of retroactivity. It ascribes the attempts to turn nonretroactivity into constitutional doctrine to the nineteenth century inclination "to regard security as the chief end of government," 6 Tex L Rev at 411, while at the same time allowing change to affect the outcome of prior acts in many situations.

1975, *supra,* expressly applicable to the subsequent trials of preexisting actions. The Oregon Constitution contains little to forbid the legislature such a choice. Unlike some state constitutions that prohibit "retrospective" or "retroactive" laws,[10] Oregon's has only the usual rule against "ex post facto" laws, art I, § 21, that has been confined to penal laws. *Fisher v. City of Astoria,* 126 Or 268, 286, 269 P 853, 60 ALR 260 (1928). Defendant invokes the provisions against laws impairing the obligation of contracts, Or Const art I, § 21 and US Const art I, § 10, but it is farfetched to read into the transaction between defendant and Miss Swan a contractual obligation on her part not to hold defendant responsible for negligence without affording it the then existing tort defenses. None of these premises help defendant here.[11]

■■ Nor can defendant derive much comfort from the fourteenth amendment. Retroactive application of a change in the law may be invalid for depriving a litigant of due process in the literal sense of an opportunity to adjudicate an existing claim, for

---

[10]Colorado Const art II, § 11; Georgia Const art I, § I, ¶ VII; Missouri Const art I, § 13; New Hampshire Const pt I, art 23; Ohio Const art II, § 28; Tennessee Const art I, § 20; Texas Const art I, § 16. Such a provision can sometimes be construed to deny retroactive effect to a new defense enacted after the injury has occurred. *See, e.g., Middleton v. Texas Light and Power Co.,* 108 Tx 96, 185 SW 556 (1916).

Six states apparently have no express prohibition against ex post facto or retrospective legislation in their constitutions. They are Connecticut, Delaware, Hawaii, Kansas, New York, and Vermont.

[11]All that remains in article I of the Oregon Constitution as a source for rights "vested" against retroactivity is the reservation of section 33 that "[t]his enumeration of rights, and privileges shall not be construed to impair or deny others retained by the people." Even on the doubtful assumption that these unarticulated "rights and privileges" lend themselves to judicial rather than political assertion against legislation (*see, e.g.,* R. Pound, *Introduction* to B. Patterson, The Forgotten Ninth Amendment at vi (1955)), a claim of right to be "retained" under such a clause must be shown to have been recognized at least in general terms to exist and to be of constitutional magnitude between government and people. As has been stated, the mid-nineteenth century conception of "vested rights" concerned proprietary interests and the reopening of past or pending cases, not every change in law that attached unanticipated consequences to past events.

instance by shortening the terms of a statute of limitations. *See* Smead, *supra,* 20 Minn L Rev at 795-796, citing cases. But the United States Supreme Court continued to hold after the fourteenth amendment that there is no constitutional objection to retroactivity as such.[12] In deciding whether an Oregon act violates a limit imposed by the due process clause or another federal provision, this court, of course, may not go beyond a fair reading of the scope given the provisions by that court.[13] Defendant cites only one Supreme Court decision as supporting its position, *Ettor v. City of Tacoma,* 228 US 148, 33 S Ct 428, 57 L Ed 773 (1913). In that case, the State of Washington had repealed a statute requiring the city to pay for the consequential damages of street grading, after a landowner had already sued for compensation under the act. The court held that retroactive application of the repeal deprived the landowner of a remedy for a liability of the city fully fixed under the prior statute, which the Court described as a "vested property right," but which it in the same sentence distinguished from a cause of action in tort.[14] *Id.* at 157-158, 33 S Ct at 431,

---

[12] "[The Fourteenth amendment] contains no prohibition of retrospective legislation as such, and therefore now, as before, the mere fact that a statute is retroactive in its operation does not make it repugnant to the Federal Constitution." *League v. Texas,* 184 US 156, 161, 22 S Ct 475, 46 L Ed 478 (1902). *See also Kentucky Union Co. v. Kentucky,* 219 US 140, 152-153, 31 S Ct 171, 55 L Ed 137 (1911) (tax laws).

[13] Defendant cites 16 CJS *Constitutional Law* § 254 and 16 Am Jur 2d *Constitutional Law* § 414, but such encyclopedic summaries cannot take the place of authoritative decisions, not cited there, or of principled analysis in the absence of precedent.

[14] We do not find persuasive the decision of the Municipal Court of Appeals for the District of Columbia in *Barrick v. District of Columbia,* 173 A2d 372 (DC 1961), *aff'd sub nom. Swenson v. Barrick,* 302 F2d 927 (DC Cir 1962), invalidating, presumably under the fifth amendment without citing it, the application to a pending claim of an act of Congress that eliminated the tort liability of District employees. We find ourselves in agreement instead with the Supreme Court of Washington in sustaining the substitution of comparative negligence for contributory negligence in actions based on past occurrences, *Godfrey v. State,* 84 Wash2d 959, 530 P2d 630 (1975).

57 L Ed at 779. The decision is of no help to defendant,[15] nor is *Fisk v. Leith,* 137 Or 459, 299 P 1013, 3 P2d 535 (1931), which apparently refers to fourteenth amendment due process, though without citation. That case decided only that a plaintiff was entitled to damages from an illegal competitor for the period before the illegality was removed by a repealing act even though the repeal foreclosed an injunction against further competition.

We conclude that defendant has shown no bar in the Oregon or United States Constitutions to trying this action under ORS 18.470 and 18.475, as the legislature prescribed in 1975. Accordingly, the case is remanded for a new trial.

Reversed and remanded.

---

[15] Defendant also cites *Sturges v. Carter,* 114 US 511, 5 S Ct 1014, 29 L Ed 240 (1885), but that case concerned the Ohio Constitution and found no retroactivity.