Argued and submitted May 12, affirmed November 17, 2010

Janell POWELL,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON,
by and through the Oregon
Department of Land Conservation and Development,
*Defendant-Respondent.*

Jefferson County Circuit Court
06CV0038; A138889

243 P3d 798

Edward P. Fitch argued the cause for appellant. With him on the briefs was Bryant, Emerson & Fitch, LLP.

Stephanie Striffler, Senior Assistant Attorney General, argued the cause for respondent. With her on the briefs were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

This case presents another episode in the long series of disputes generated by Ballot Measure 49, the referendum that modified Measure 37 and altered the government's obligations with respect to reductions in property value caused by regulation. In this case, plaintiff initially filed a claim under Measure 37 before the enactment of Measure 49, only to have that pending claim extinguished in the circuit court after Measure 49 went into effect. On appeal, plaintiff advances two arguments. Initially, she argues that Measure 49, by its terms, does not apply retroactively. Alternatively, plaintiff contends that, if Measure 49 is retroactive, its application so as to moot ongoing litigation violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We have already rejected the former argument. *Bleeg v. Metro*, 229 Or App 210, 211 P3d 302 (2009), *rev den*, 349 Or 56 (2010). We now reject the latter as well.

Plaintiff owns property in Jefferson County that she first acquired in 1967. In May 1985, plaintiff apparently was the victim of a fraud perpetrated by Robert J. Wright. Plaintiff transferred title to the property as security for a loan, but Wright transferred ownership of the property to a separate trust. After discovering the fraud, plaintiff demanded and obtained rescission of the conveyance. Title to the property was conveyed back to plaintiff a few weeks after being transferred to the trust.

In April 2005, plaintiff submitted a claim for compensation under the provisions of Measure 37, *former* ORS 197.352 (2005), *amended by* Oregon Laws 2007, chapter 424, section 4, *renumbered as* ORS 195.305 (2007). Generally speaking, Measure 37 required

> "public entities that enact and enforce land use regulations to pay a landowner whose property is affected by any such regulations 'just compensation,' which the statute generally defined as an amount equal to the 'reduction in the fair market value of the affected property interest' resulting from enforcement of any land use regulation enacted *after the date of acquisition of the property* by the landowner or a family member of the landowner."

*Corey v. DLCD*, 344 Or 457, 460, 184 P3d 1109 (2008) (quoting Measure 37) (emphasis added). The state Department of Land Conservation and Development (DLCD) denied plaintiff's Measure 37 claim for compensation, and the state continued to enforce the regulations that were in effect as of the date that plaintiff reacquired title from Wright, on the ground that those regulations were already in force at that time.

On July 28, 2006, plaintiff filed this action in circuit court seeking compensation under Measure 37. Plaintiff took the position that the only regulations that the state could continue to enforce without paying compensation were those in effect in 1967, when she first acquired the land. The state, as it had before DLCD, took the position that the relevant date was 1985, when plaintiff reacquired title from Wright. While the action was pending in the circuit court, however, the voters enacted Measure 49, "which amended Measure 37 and added provisions that altered the claims and remedies available to landowners whose property values are adversely affected by land use regulations." *Corey*, 344 Or at 463. Thereafter, the state moved to dismiss plaintiff's complaint on the ground that it had become moot as a result of the passage of Measure 49.[1] The trial court agreed and dismissed the complaint.

■    On appeal, plaintiff advances two arguments as to why the court erred in dismissing her complaint. First, she asserts that Measure 49 was not intended to retroactively replace the claims and remedies available to landowners who, at the time Measure 49 went into effect, were already in circuit court litigating under Measure 37. After plaintiff filed her opening brief in this case, we decided that statutory construction issue contrary to plaintiff's position. *Bleeg*, 229 Or App at 217. Plaintiff acknowledges that *Bleeg* is controlling. We agree, and we reject her first argument without further discussion.

---

[1] The state also moved to dismiss on the ground that plaintiff did not exhaust her administrative remedies with DLCD before filing this action. The circuit court denied that motion, and the state cross-assigns that ruling as error. Given our resolution of plaintiff's appeal, we need not reach the merits of the cross-assignment.

■     Plaintiff's second argument is that, if Measure 49 was indeed intended to replace her Measure 37 remedies, then it is unconstitutional. More specifically, plaintiff contends that, under the Due Process Clause of the Fourteenth Amendment, she cannot be legislatively deprived of a "vested right in her Measure 37 litigation"; she further argues that the retroactive application of Measure 49 is "arbitrary and irrational" as applied to her. Neither argument is persuasive.

■     As an initial matter, we understand plaintiff to advance a substantive due process argument, as opposed to a procedural due process argument. The latter species of argument acknowledges that the state's objective is within its lawful authority, but that the process of achieving that objective does not afford the person who is the subject of the state's action with adequate procedural safeguards such as prior notice and a meaningful hearing. *E.g.*, *Goldberg v. Kelly*, 397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970) (state cannot deprive a person of entitlement to welfare without notice and a prior hearing). An argument grounded in substantive due process, on the other hand, asserts that the state's objective is simply beyond its power to achieve, regardless of how many procedural safeguards it might provide. Thus, for example, the state cannot punish a person for using contraception. *Griswold v. Connecticut*, 381 US 479, 85 S Ct 1678, 14 L Ed 2d 510 (1965). In the present case, plaintiff does not contend that the process through which the state enacted Measure 49 was procedurally inadequate, nor that her hearing before DLCD provided her with constitutionally inadequate notice or opportunity to be heard. Rather, she contends that depriving her of a "vested right" to complete an ongoing judicial proceeding is itself unlawful.

Plaintiff's "vested rights" argument is premised principally on two United States Supreme Court decisions, both decided in the early part of the last century. The first, *Ettor v. City of Tacoma*, 228 US 148, 156, 33 S Ct 428, 57 L Ed 773 (1913), involved legislation that eliminated a property owner's right to compensation from the city for damage resulting from an original street grading. The City of Tacoma had directed a railroad company to perform the street grading, and the plaintiffs, whose property abutted the street, allegedly suffered consequential damages as a result. The

plaintiffs filed an action against the city seeking compensation under a statute that, at the time that the grading was done, required the city to pay compensation for consequential damages resulting from an original street grading. While the plaintiffs' claims were being litigated in the trial court, the statute was amended and, as amended, no longer applied to the original grading of any street. The trial court gave retroactive effect to the change and directed a verdict for the city. *Id.* at 150.

Before the Supreme Court, the plaintiffs argued that "their right to [compensation under the statute], having accrued while the act was in force, cannot be destroyed by subsequent legislation without a violation of the rights guaranteed by the 14th Amendment." *Id.* The Court agreed, explaining:

"The court below gave a retrospective effect to the amendatory and repealing act by holding that the effect of the repeal was to destroy the right to compensation which had accrued while the act was in force. The obligation of the city was fixed. The [plaintiffs] had a claim [for] which the city was as much under obligation to pay as for the labor employed to do the grading. It was a claim assignable and enforceable by a common-law action for a breach of the statutory obligation.

"The necessary effect of the repealing act, as construed and applied by the court below, was to deprive the [plaintiffs] of any remedy to enforce the fixed liability of the city to make compensation. This was to deprive the [plaintiffs] of a right which had vested before the repealing act—a right which was in every sense a property right. Nothing remained to be done to complete the plaintiffs' right to compensation except the ascertainment of the amount of damage to their property. The right of the [plaintiffs] was fixed by the law in force when their property was damaged for public purposes, and the right so vested cannot be defeated by subsequent legislation."

*Id.* at 155-56. In distinguishing earlier cases in which the repeal of a statute was held to terminate pending litigation, the Court explained:

"In the instant case the action is neither for a tort, nor for a penalty, nor for a forfeiture, but for injury to property,

> actually accomplished before the repeal of the law under which the street was graded, which required compensation to be made. The right to compensation was a vested property right."

*Id.* at 157-58.

Two decades later, the Supreme Court decided *Coombes v. Getz*, 285 US 434, 52 S Ct 435, 76 L Ed 866 (1932), the other case on which plaintiff relies. In *Coombes*, a creditor of Getz Bros. & Company brought suit against a director of that company for misappropriation and embezzlement by its officers. The creditor's claims were based on a provision of California's constitution that made corporate directors jointly and severally liable to the corporation's creditors for all funds embezzled or misappropriated by corporate officers. While an appeal to the California Supreme Court was pending, the state constitutional provision was repealed, and the director moved to dismiss the appeal on the ground that the cause of action had abated. The state supreme court agreed and dismissed the appeal. *Id.* at 440.

The United States Supreme Court reversed, holding that the retroactive application of the repeal would violate the creditor's rights to due process under the Fourteenth Amendment. The Court, relying on *Ettor*, reasoned that the "right of [the creditor] to enforce [the director's] liability had become fully perfected and vested prior to the repeal of the liability provision." *Id.* at 442. After distinguishing other cases in which it had upheld retroactive statutes in the face of similar challenges, the Court explained:

> "The case here is entirely different. * * * No element of a contract was present. Here both parties acted. The creditor extended credit to the corporation; and his action in so doing, under the state constitutional provision, brought into force for his benefit the constitutional obligation of the director, which, by becoming a director, the latter had voluntarily assumed and, thereby, in the eye of the law, created against himself a contractual liability in the nature of a suretyship. * * * Doubts which otherwise might have existed in respect of the character and effect of the transaction are no longer open. It is settled by decisions of this and other federal courts ([*Ettor*] and cases cited in connection

therewith, supra) that, upon the facts here disclosed, a contractual obligation arose; and the right to enforce it, having become vested, comes within the protection of both the contract impairment clause in Art. 1, § 10, and the due process of law clause in the 14th Amendment, of the federal Constitution."

*Id.* at 448.

It is necessary to put *Ettor* and *Coombes* in historical perspective. Although neither case has been overruled, the jurisprudential foundation on which they rest has been repeatedly and emphatically repudiated. Both cases date from the much-maligned *"Lochner* era" of Supreme Court jurisprudence,[2] during which the Court exercised stringent review of economic regulation and struck down a number of statutes that it considered unwise or unnecessary burdens on economic life. In *Lochner* itself, the Court held that a New York statute limiting the number of hours that bakers could work to 60 per week was an unconstitutional imposition on the economic liberty guaranteed by the Due Process Clause. *Lochner v. New York*, 198 US 45, 52-53, 25 S Ct 539, 49 L Ed 937 (1905). Like *Ettor* and *Coombes*, *Lochner* has never been overruled. Nonetheless, it is—at least for now—dead. "The day is gone when [the Supreme Court] uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought." *Williamson v. Lee Optical of Oklahoma*, 348 US 483, 488, 75 S Ct 461, 99 L Ed 563 (1955); *Planned Parenthood v. Casey*, 505 US 833, 861, 112 S Ct 2791, 120 L Ed 2d 674 (1992) ("*West Coast Hotel Co. v. Parrish*, 300 US 379, [57 S Ct 578, 81 L Ed 703 (1937)], signaled the demise of *Lochner* * * *.").

Beginning with *West Coast Hotel Co.*, and for the past three-quarters of a century, the Court's substantive due process analysis in the area of economic legislation has been framed in terms of rationality rather than in terms of "vested rights." Indeed, by the mid-1970s, it was "well established that legislative Acts adjusting the burdens and benefits of

---

[2] *Lochner v. New York*, 198 US 45, 25 S Ct 539, 49 L Ed 937 (1905).

economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 US 1, 15, 96 S Ct 2882, 49 L Ed 2d 752 (1976). That same standard has been applied to retroactive economic legislation:

> "Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches[.] * * *

> "To be sure, * * * retroactive legislation does have to meet a burden not faced by legislation that has only future effects. * * * 'The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former.' * * * But *that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.*"

*Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 US 717, 729-30, 104 S Ct 2709, 81 L Ed 2d 601 (1984) (quoting *Usery*, 428 US at 16-17) (emphasis added). In *General Motors Corp. v. Romein*, 503 US 181, 191, 112 S Ct 1105, 117 L Ed 2d 328 (1992), the Court stated:

> "Retroactive legislation presents problems of unfairness that are more serious than those posed by prospective legislation, because it can deprive citizens of legitimate expectations and upset settled transactions. For this reason, '[t]he retroactive aspects of [economic] legislation, as well as the prospective aspects, must meet the test of due process': a legitimate legislative purpose furthered by rational means."

(Quoting *Pension Benefit Guaranty Corp.*, 467 US at 730 (alterations in *Romein*).)

Plaintiff contends that, regardless of what the United States Supreme Court may have done, the Oregon Supreme Court has signaled adherence to the older substantive due process jurisprudence. In particular, plaintiff points to *Hall v. Northwest Outward Bound School*, 280 Or 655,

661-62, 572 P2d 1007 (1977). In that wrongful death case, the plaintiff sought to invoke a statute eliminating the defenses of "last clear chance" and "assumption of the risk." The statute was enacted after the case was initiated but before trial. The trial court refused to strike the defendant's last clear chance and assumption of the risk defenses on the ground that the new statute could not be applied retroactively. *Id.* at 657. The Supreme Court reversed, holding, "We find no constitutional obstacle to the application of [the new statutes] to this litigation and therefore remand the case for a new trial." *Id.* at 658. In the process, the court discussed *Ettor* and held, "The decision is of no help to defendant[.]" *Id.* at 663. It therefore appears that the case aids the state, not plaintiff. Plaintiff, however, focuses on the court's passing observation that "[r]etroactive application of a change in the law may be invalid for depriving a litigant of due process in the literal sense of an opportunity to adjudicate an existing claim, for instance by shortening the terms of a statute of limitations." *Id.* at 661-62. That observation does not help plaintiff for several reasons. First, it is *dictum.* Second, it expresses a mere possibility: retroactive application *"may be"* invalid. And most significantly, even if it were a solid holding, it does not apply to the facts in this case. In the hypothetical situation in the *Hall dictum*, the hypothetically unconstitutional statute deprives a litigant of an opportunity to litigate an existing claim, without negating the existence of the claim. Measure 49, in contrast, deprives plaintiff of the claim itself.

Given the current state of substantive due process jurisprudence, we decline plaintiff's invitation to rouse the "ghost of *Lochner*"[3] through a "vested rights" analysis of economic regulation. *See Honeywell, Inc. v. Minnesota Life and Health Ins. Guaranty Ass'n*, 110 F3d 547 (8th Cir), *cert den*, 522 US 858 (1997) (similarly declining to use a "vested rights" approach when analyzing a substantive due process challenge to retroactive economic legislation).[4]

---

[3] *See F. H. A. v. The Darlington, Inc.*, 358 US 84, 92, 79 S Ct 141, 3 L Ed 2d 132 (1958) ("Invocation of the Due Process Clause to protect the rights asserted here would make the ghost of *Lochner* * * * walk again.").

[4] In *Honeywell*, the Eighth Circuit traced the evolution of the Supreme Court's substantive due process case law and concluded:

"[E]ven though *Coombes* and *Ettor* have never been overruled by the Supreme Court, the modern framework for substantive due process analysis concerning

Evaluated under the more modern substantive due process framework—that is, whether the statute and its retroactive application have a "legitimate legislative purpose furthered by rational means"—Measure 49 plainly passes muster. After Measure 37 was enacted, some Oregonians began to question whether they had struck the proper balance between, on the one hand, the rights of property owners to use their property without regard to certain later-enacted restrictions, and on the other, the societal interests protected by state and local land use regulations. Section 3 of Ballot Measure 49 explains:

"(1)   The Legislative Assembly finds that:

"(a)   In some situations, land use regulations unfairly burden particular property owners.

"(b)   To address these situations, it is necessary to amend Oregon's land use statutes to provide just compensation for unfair burdens caused by land use regulations.

"(2)   The purpose of sections 5 to 22 of this 2007 Act and the amendments to Ballot Measure 37 (2004) is to modify

---

economic legislation requires only an inquiry into whether the legislation is reasonably related to a legitimate governmental purpose. Given the criticism surrounding the Court's *Lochner* era decisions in general, coupled with the development of judicial deference to economic legislation since then, we join those who question the continued validity of the vested rights analysis of *Coombes* and *Ettor* when reviewing the constitutionality of economic legislation, recognizing as we must that only the Supreme Court itself can overrule its precedents. We rely instead on the more recent Supreme Court pronouncements of substantive due process analysis for economic legislation, which articulate a rational basis test."

110 F3d at 554-55. Legal scholars universally agree. *See* Jill E. Fisch, *Retroactivity and Legal Change: An Equilibrium Approach*, 110 Harv L Rev 1055, 1063-64 (1997) ("The principle of legislative nonretroactivity found early support in the substantive due process and contract rights enforced by the Court prior to the New Deal, but the subsequent erosion of the doctrine of substantive due process curtailed any judicial inclination to subject retroactive legislation to intensive scrutiny."); James L. Kainen, *The Historical Framework for Reviving Constitutional Protection for Property and Contract Rights*, 79 Cornell L Rev 87, 119 (1993) ("Modern jurists reject the categorical logic of vesting and consider the statute's justifications under the rubric of substantive due process."); Charles B. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv L Rev 692, 696-97 (1960) ("[I]t has long been recognized that the term 'vested right' is conclusory—a right is vested when it has been so far perfected that it cannot be taken away by statute"; the factors that drive the retroactivity analysis are "the nature and strength of the public interest served by the statute, the extent to which the statute modifies or abrogates the asserted preenactment right, and the nature of the right which the statute alters[.]").

Ballot Measure 37 (2004) to ensure that Oregon law provides just compensation for unfair burdens while retaining Oregon's protections for farm and forest uses and the state's water resources."

Or Laws 2007, ch 424, § 3.

Plaintiff cannot credibly claim that the legislature and the voters lacked a legitimate government purpose in rebalancing public and private land use interests under Measure 49. Nor was it irrational to accomplish that rebalancing retroactively. Within three years after its passage, the legislature and voters had decided that the costs of Measure 37—both economically and in terms of livability—were too great. Given the number of Measure 37 claims that were being processed, and the potential costs of those pending claims, the legislature and the voters decided that it was in the best interest of the state to replace the remedies in all Measure 37 cases, pending and future. Simply put, the retroactive application of Measure 49 was a rational response to the legitimate governmental concerns posed by Measure 37.

■   Our conclusion in that regard also answers plaintiff's second substantive due process argument—*i.e.*, that Measure 49 is "arbitrary and irrational" and "particularly harsh and oppressive." On occasion, the United States Supreme Court has framed the due process analysis in terms of whether " 'retroactive application is so harsh and oppressive as to transgress the constitutional limitation.' " *United States v. Hemme*, 476 US 558, 568-69, 106 S Ct 2071, 90 L Ed 2d 538 (1986) (quoting *Welch v. Henry*, 305 US 134, 147, 59 S Ct 121, 83 L Ed 87 (1938)). The Court has since made clear that "[t]he 'harsh and oppressive' formulation, however, 'does not differ from the prohibition against arbitrary and irrational legislation' that applies generally to enactments in the sphere of economic policy." *United States v. Carlton*, 512 US 26, 30, 114 S Ct 2018, 129 L Ed 2d 22 (1994) (quoting *Pension Benefit Guaranty Corp.*, 467 US at 733). The relevant standard for determining whether retroactive legislation is "arbitrary" or "irrational" is the one that we have already discussed: whether the legislation and its retroactive application further a legitimate legislative purpose by rational means.

■ In sum, we reject plaintiff's contentions that Measure 49 either (1) applies only prospectively to Measure 37 claims or (2) through retroactive application violates her right to substantive due process under the Due Process Clause of the Fourteenth Amendment. The circuit court did not err in dismissing her complaint.[5]

Affirmed.

---

[5] Plaintiff's reply brief contains a battery of arguments regarding Article I, section 10, of the Oregon Constitution, which guarantees that the law will provide a remedy for injury to person, property, or reputation. We will not entertain those arguments, which were made for the first time in a reply brief. *See Hayes Oyster Co. v. Dulcich,* 170 Or App 219, 237 n 20, 12 P3d 507 (2000) (refusing to address an argument raised for the first time in a reply brief).