Argued and submitted September 7, affirmed December 29, 2010, petition for review denied May 5, 2011 (350 Or 297)

Larry L. LUETHE
and Laura B. Luethe,
husband and wife,
*Plaintiffs-Appellants,*

*v.*

MULTNOMAH COUNTY,
a political subdivision of the State of Oregon;
Department of Land Conservation and Development,
an agency of the State of Oregon;
Land Conservation and Development Commission,
an agency of the State of Oregon;
Department of Environmental Quality,
an agency of the State of Oregon;
Department of Forestry,
an agency of the State of Oregon;
and Department of Administrative Services,
an agency of the State of Oregon,
*Defendants-Respondents.*

Multnomah County Circuit Court
060909466; A138836

246 P3d 487

Stephen F. Crew argued the cause for appellants. With him on the briefs were Kristian Roggendorf, Peter B. Janci, and O'Donnell Clark & Crew LLP.

Stephen L. Madkour, Assistant County Attorney, argued the cause for respondent Multnomah County, Oregon. With him on the brief was Agnes Sowle, County Attorney for Multnomah County, Oregon.

Stephanie L. Striffler, Senior Assistant Attorney General, argued the cause for respondent State of Oregon. With her on the briefs were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Landau, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

This is another case requiring us to consider the meaning and application of Measure 49, the referendum that replaced Measure 37 and altered its remedies for reduction in property value caused by a land use regulation. Plaintiffs, who filed suit seeking compensation under Measure 37, appeal the subsequent dismissal of that suit on mootness grounds precipitated by the enactment of Measure 49. On appeal, they advance two general arguments: (1) they have a "vested right" in their "cause of action for compensation" under Measure 37 and, if Measure 49 operates retroactively to abolish that right, then application of Measure 49 to plaintiffs' suit violates the Fifth and Fourteenth Amendments to the United States Constitution;[1] and (2) the trial court had discretion to enter judgment *nunc pro tunc* in favor of plaintiffs on their Measure 37 claims, and plaintiffs' situation warranted such a ruling.

In other cases, we have already considered and rejected arguments substantially similar to those raised by plaintiffs. *See, e.g., Powell v. DLCD*, 238 Or App 678, 682, 690, 243 P3d 798 (2010) (rejecting the plaintiff's contention that retroactive application of Measure 49 to her pending Measure 37 litigation violated her right to substantive due process under the Due Process Clause of the Fourteenth Amendment by depriving her of a "vested right in her Measure 37 litigation"); *Bleeg v. Metro*, 229 Or App 210, 213, 217-18, 211 P3d 302 (2009), *rev den*, 349 Or 56 (2010) (concluding that, because the plaintiffs' Measure 37 claims for just compensation were ongoing at the time Measure 49 became effective, Measure 49 superseded those claims, deprived the trial court's corrected judgments, which were entered *nunc pro tunc*, of continuing viability, and rendered the plaintiffs' cases nonjusticiable). In this case, we write to address only those aspects of plaintiffs' arguments that were

---

[1] The Fifth Amendment provides, in part, "No person shall be * * * deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." The Fourteenth Amendment provides, in part, "No State shall * * * deprive any person of life, liberty, or property, without due process of law."

not considered in those prior cases and, for the reasons that follow, affirm.[2]

Plaintiffs own approximately 19 acres of property in Multnomah County, which they purchased in 1973 from a family member. In June 2005, pursuant to Measure 37, *former* ORS 197.352 (2005), *amended by* Or Laws 2007, ch 424, § 4, *renumbered as* ORS 195.305 (2007), plaintiffs submitted a "written demand for compensation" to each of defendants based on the reduction in value of their property as a result of state and county land use regulations that restricted the use of their property.[3] Plaintiffs obtained a state waiver of some, but not all, of the state land use regulations that plaintiffs alleged reduced the value of their property. The county did not act on plaintiffs' demand because it determined that plaintiffs' claim was not complete. In September 2006, pursuant to section 6 of Measure 37, *former* ORS 197.352(6), plaintiffs filed suit against defendants seeking monetary compensation for the reduction in value of their property;[4] plaintiffs also sought a declaration that any waivers issued by defendants under Measure 37 would be transferable to a subsequent owner.

---

[2] State defendants cross-assign error to intermediate rulings by the trial court that (1) denied the state's earlier motion to dismiss under the Administrative Procedures Act and (2) concluded that plaintiffs were entitled to Measure 37 relief. Given our disposition of plaintiffs' assignments of error, we do not reach those cross-assignments of error.

[3] *Former* ORS 197.352(1) provided:

"If a public entity enacts or enforces a new land use regulation enacted prior to December 2, 2004, that restricts the use of private real property or any interest therein and has the effect of reducing the fair market value of the property, or any interest therein, then the owner of the property shall be paid just compensation."

[4] *Former* ORS 197.352(6) provided:

"If a land use regulation continues to apply to the subject property more than 180 days after the present owner of the property has made written demand for compensation under this section, the present owner of the property, or any interest therein, shall have a cause of action for compensation under this section in the circuit court in which the real property is located, and the present owner of the real property shall be entitled to reasonable attorney fees, expenses, costs, and other disbursements reasonably incurred to collect the compensation."

The case went to trial on November 5, 2007, the day before Measure 49 was adopted by the voters in a special election. On November 14, 2007, while Measure 49 was not yet in effect, the trial court orally ruled in favor of plaintiffs, finding that certain state and county land use regulations reduced the fair market value of their property in the amount of $750,000. The court also orally ruled that defendants were not obliged to pay plaintiffs compensation in the liquidated amount, but, rather, that defendants could elect to do so. Plaintiffs submitted a proposed judgment with findings of fact and conclusions of law to defendants, who thereafter filed objections to that judgment.

On December 6, 2007, while those objections were pending before the trial court, Measure 49 became effective. "Measure 49 set out a different compensation allowance for a reduction in fair market value caused by a post-acquisition land use regulation, and reduced the degree of residential development allowed under a previously requested Measure 37 waiver." *Norwood v. Washington County*, 239 Or App 542, 545, 245 P3d 659 (2010). Specifically, for Measure 37 claims filed on or before June 28, 2007, section 5 of Measure 49 allowed three types of relief for property owners—none of which recognized an entitlement to monetary compensation. *See* Or Laws 2007, ch 424, § 5.[5]

---

[5] Section 5 of Measure 49 provides:

"A claimant that filed a claim under ORS 197.352 on or before the date of adjournment sine die of the 2007 regular session of the Seventy-fourth Legislative Assembly [June 28, 2007] is entitled to just compensation as provided in:

"(1) Sections 6 or 7 of this 2007 Act, at the claimant's election, if the property described in the claim is located entirely outside any urban growth boundary and entirely outside the boundaries of any city;

"(2) Section 9 of this 2007 Act if the property described in the claim is located, in whole or in part, within an urban growth boundary; or

"(3) A waiver issued before the effective date of this 2007 Act [December 6, 2007] to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver."

Section 6 of the measure requires approval of up to three lots, parcels, or dwellings under certain circumstances; section 7 permits discretionary approval of up to 10 homesites under a more narrow set of circumstances; section 9 provides that owners of property within the urban growth boundary of a city may qualify to develop one to 10 single-family dwellings under specified circumstances.

Defendants subsequently filed motions to dismiss plaintiffs' suit under ORCP 21 A on the grounds that plaintiffs' Measure 37 claims were moot and did not state facts on which relief could be granted.[6] In response to those motions, plaintiffs argued, among other things, that (1) Measure 49 did not retroactively apply to "causes of action" brought under Measure 37; and (2) plaintiffs had a "vested right" to relief under Measure 37 that was protected by the Fifth and Fourteenth Amendments. The trial court agreed with defendants and issued a letter opinion concluding that Measure 49 applied to all of plaintiffs' Measure 37 claims, that no constitutional impediment prevented the retroactive application of Measure 49, and that the litigation was moot.

Plaintiffs then filed a motion that alleged that the trial court had "rendered a judgment" in plaintiffs' favor on November 14, 2007, and that the trial court should enter that judgment *nunc pro tunc*. At the hearing on the motion, the trial court denied plaintiffs' request, concluding that it lacked the necessary discretion to do what plaintiffs wanted, although it agreed with plaintiffs that the equities weighed in their favor. The trial court subsequently entered orders granting defendants' motions to dismiss and denying plaintiffs' motion for entry of judgment *nunc pro tunc*. Plaintiffs now appeal from the resulting general judgment, which dismissed their claims and awarded defendants costs and disbursements.

We review for errors of law and, as noted above, write only to address those aspects of plaintiffs' arguments on appeal that have not been addressed in preceding cases. We begin with plaintiffs' argument that they have a "vested right" in their "cause of action for compensation" under Measure 37 that is protected by the Fifth and Fourteenth Amendments and cannot be destroyed by the retroactive application of Measure 49. In support of their argument, plaintiffs place heavy reliance on a case decided by the

---

[6] ORCP 21 A(1) provides for dismissal of a claim on the ground that there is a "lack of jurisdiction over the subject matter"; ORCP 21 A(8) provides for dismissal of a claim on the ground that there is a "failure to state ultimate facts sufficient to constitute a claim."

Oregon Supreme Court more than 75 years ago: *Fisk v. Leith*, 137 Or 459, 299 P 1013, *on reh'g*, 3 P2d 535 (1931). Plaintiffs contend that "*Fisk* stands for the proposition that a statutory right to damages can become vested simply by accrual, and that the injured party has an inviolable right to secure judgment on those damages." We did not address the implications of *Fisk* in our analysis in *Powell* under the Due Process Clause of the Fourteenth Amendment. In *Powell*, we ultimately rejected the plaintiff's contention that retroactive application of Measure 49 unconstitutionally deprived her of a "vested right in her Measure 37 litigation." 238 Or App at 682, 690. Thus, we now consider the reasoning in *Fisk* and whether it is controlling in this case.

The core issue presented to the court in *Fisk* was whether the prevailing plaintiffs' suit for an injunction and damages survived the repeal of a certain statute. At the time that the plaintiffs commenced their suit, the statute was in effect and provided, in part:

> " 'No public utility * * * shall henceforth begin the construction of a line, plant or system, or any part thereof, in or into any territory already served by a similar utility without having first obtained from the public service commission of Oregon * * * a certificate that the present or future public convenience and necessity require, or will require such construction[.]' "

*Fisk*, 137 Or at 461 (quoting Oregon Code, title LXI, ch 3, § 61-301 (1930)). The plaintiffs in *Fisk* included the first public utility company to serve the territory of Gold Beach. The defendants included a competing public utility company that had applied for, and been denied, the statutorily required certificate, but which had constructed improvements and served customers in the plaintiffs' territory. As a result of the defendants' allegedly unlawful competition, the plaintiffs sued and alleged that the defendants' conduct deprived them of numerous customers, resulting in $4,000 in damages. *Id.* at 461, 464. The trial court ultimately issued an order of injunction against the defendants and awarded the plaintiffs $2,000 in damages caused by the allegedly wrongful acts of the defendants. *Id.* at 461. Pending the defendants' appeal, however, the statute requiring the certificate was repealed. *Id.*

The Supreme Court initially concluded:

"In view of the repeal of the statute requiring the certificate it is clear that no injunctive relief can be granted although it may have been proper to do so at the time the decision was rendered in the circuit court. No person has a vested right in a remedy. It would be an absurd thing to enjoin defendants from engaging in the business of furnishing light and power until a certificate * * * had been obtained from the Public Service Commission when, in fact, such commission has no longer authority to issue the certificate."

*Id.* at 462. The court then went on to consider "[t]he more difficult question [of] whether equity should retain jurisdiction to assess damages for the wrongful acts of defendants while the law was in force and effect." *Id.* The court prefaced its analysis of that question by distinguishing the repealed statute at issue from the statutes repealed in other contexts:

"There is strong language in the texts and encyclopedias supporting the theory of defendants that the statute repealed precludes any recovery by plaintiff, but when the facts in the cases cited in support thereof are closely examined, it will be found that statutory remedies, procedure, or penalties were involved. * * * Neither are we concerned with the repeal of a statute expressly creating a cause of action * * *."

*Id.* at 462-63. It was in that context—one where the repealed statute did not provide either the cause of action itself or the remedy for the cause of action—that the court engaged in the following analysis:

"In the instant case the statute repealed conferred upon the plaintiff a right as distinguished from a remedy. It protected the plaintiff * * * from competition by the other public utilities in the same territory until the Public Service Commission issued them a certificate * * *. This statutory right thus to engage in business was a property asset—a vested right—and, a cause of action having accrued by reason of interference therewith, such could not be destroyed by subsequent legislation. The cause of action which accrued prior to the repeal of the statute is property in the same sense in which tangible things are property, and its

destruction would amount to the taking of property without due process of law[.]"

*Id.* at 463.

■　　　Plaintiffs in the present case read *Fisk* as determining that a cause of action is property and is entitled to protection from the retroactive application of a change in the law under the Due Process Clause of the Fourteenth Amendment or the Takings Clause of the Fifth Amendment. Plaintiffs read *Fisk* too broadly. In *Hall v. Northwest Outward Bound School*, 280 Or 655, 663, 572 P2d 1007 (1977), the Oregon Supreme Court underscored the narrowness of its decision in *Fisk* by explaining that *Fisk* "decided only that a plaintiff was entitled to damages from an illegal competitor for the period before the illegality was removed by a repealing act even though the repeal foreclosed an injunction against further competition."

The litigation in *Fisk* concerned what was, in essence, a claim in tort. The repealed statute was relevant to that claim only insofar as it established the standard of conduct that the defendants allegedly transgressed and thereby caused the plaintiffs injury. The repeal of the statute in no way repealed the plaintiffs' cause of action—their claim in tort—or their requested remedy—monetary damages for the defendants' past conduct. By contrast, Measure 49 replaced and altered the remedies previously available under Measure 37 for reduction in property value caused by land use regulations. Therefore, to the extent that *Fisk* remains good law, despite its use of a "vested rights" analysis, it is inapposite and fails to aid plaintiffs' constitutional arguments on appeal.

Further, to the extent that *Fisk* is based on "the much-maligned '*Lochner* era' of [United States] Supreme Court jurisprudence,[7] during which the court exercised stringent review of economic regulation" under substantive due process, that jurisprudential foundation "has been repeatedly and emphatically repudiated." *Powell*, 238 Or App at 685 (discussing the repudiation of *Lochner*). Therefore, in this case, we hold to our decision in *Powell*: "Given the

_____

[7] *Lochner v. New York*, 198 US 45, 25 S Ct 539, 49 L Ed 937 (1905).

current state of substantive due process jurisprudence, we decline plaintiff[s'] invitation to rouse the 'ghost of *Lochner*' through a 'vested rights' analysis of economic regulation." *Id.* at 687 (footnote and citation omitted). Further, when "[e]valuated under the more modern substantive due process framework—that is, whether the statute and its retroactive application have a 'legitimate legislative purpose furthered by rational means'—Measure 49 plainly passes muster." *Id.* at 688.

 Nor are we persuaded that the retroactive application of Measure 49 to plaintiffs' claims runs afoul of the Takings Clause of the Fifth Amendment. Plaintiffs argue that, "[t]o the extent the cause of action is viewed as actual property, protection under the Fifth Amendment is also an appropriate vehicle." We understand plaintiffs to again rely, primarily, on *Fisk* for their contention that a cause of action is property. For all the reasons discussed above, *Fisk* is unavailing. More to the point, however, "[a] vested right must be something more than a mere expectation based upon the anticipated continuance of existing laws; it must have become a title legal or equitable to the present or future enjoyment of property." *DeMendoza v. Huffman*, 334 Or 425, 449, 51 P3d 1232 (2002) (citation and internal quotation marks omitted). As we explained in *Smejkal v. DAS*, 239 Or App 553, 561, 246 P3d 1140 (2010), "Measure 37 did not inhibit the Legislative Assembly or the people from enacting regulations on the use of [a] plaintiff's properties." In other words, Measure 37 did not embody a contractual commitment by the government to allow plaintiffs' Measure 37 suit for monetary compensation to continue unabated. Further, as we explain below, plaintiffs had not yet achieved a final, unreviewable judgment on their Measure 37 claims when Measure 49 became effective. Plaintiffs' takings argument fails because they have identified no cognizable property interest protected by the Fifth Amendment.[8]

---

[8] In support of their argument that retroactive application of Measure 49 is unconstitutional, plaintiffs also appear to rely, in passing, on Article I, section 10, of the Oregon Constitution, which guarantees that the law will provide a remedy for injury to person, property, or reputation. We observe that, under *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 124, 23 P3d 333 (2001), the Oregon Supreme Court described the analysis under Oregon's remedy clause as follows:

Finally, plaintiffs argue that the trial court should have entered judgment *nunc pro tunc* in their favor on their Measure 37 claims. Plaintiffs' argument is premised on their assertion that the trial court "had rendered its judgment" on November 14, 2007. As an initial matter, plaintiffs are wrong to characterize the trial court's oral ruling as a "judgment." The legislature has specifically defined "judgment" in ORS 18.005(8) as "the concluding decision of a court on one or more requests for relief in one or more actions, *as reflected in a judgment document.*" (Emphasis added.) Here, the trial court's oral ruling was never incorporated by the trial court into a written document. There simply was no "judgment" in this case before the effective date of Measure 49.

■ ■ Further, and more importantly, the trial court did not err in failing to enter judgment *nunc pro tunc* based on its oral ruling, because plaintiffs' case was mooted by Measure 49. "Measure 49 pertains to *all* Measure 37 claims, successful or not, and regardless of where they are in the Measure 37 process." *Corey v. DLCD*, 344 Or 457, 465, 184 P3d 1109 (2008) (emphasis in original). However, "when a claim is reduced to a final judgment, the underlying claim is extinguished, 'merging' into the judgment; as a result, the 'rights upon the judgment are substituted for the former claim.' *Barrett and Barrett*, 320 Or 372, 378, 886 P2d 1 (1994)." *State ex rel English v. Multnomah County*, 348 Or 417, 430, 238 P3d 980 (2010). Thus, in *English*, the court held that a landowner's Measure 37 claim "was extinguished once her claim was reduced to a final judgment." *Id.* In that case, the county had dismissed its appeal, and the Court of Appeals had issued the appellate judgment; as a result, the landowner's

"[I]n analyzing a claim under the remedy clause, the first question is whether the plaintiff has alleged an injury to one of the absolute rights that Article I, section 10 protects. Stated differently, when the drafters wrote the Oregon Constitution in 1857, did the common law of Oregon recognize a cause of action for the alleged injury? If the answer to that question is yes, and if the legislature has abolished the common-law cause of action for injury to rights that are protected by the remedy clause, then the second question is whether it has provided a constitutionally adequate substitute remedy for the common-law cause of action for that injury."

However, because plaintiffs failed to present to the trial court their contention that retroactive application of Measure 49 violates Article I, section 10, it is unpreserved, and we do not discuss it further.

rights under Measure 37 were replaced with her rights under the trial court judgment. *Id.*

By contrast, in *Bleeg*, we determined that the plaintiffs' Measure 37 claims were ongoing at the time Measure 49 became effective, regardless of the fact that the trial court had entered corrected judgments *nunc pro tunc* to the day before Measure 49 became effective. 229 Or App at 213, 217. Because Measure 49 superseded the plaintiffs' claims, we concluded that the trial court's judgments were deprived of continuing viability and that the plaintiffs' cases were no longer justiciable. *Id.* at 217-18. Similarly, here, because plaintiffs' Measure 37 claims had not been extinguished by a final, unreviewable, judgment by December 6, 2007, they were superseded by Measure 49 and were no longer justiciable. The trial court did not err in dismissing them or in denying plaintiffs' motion for entry of judgment *nunc pro tunc*.

Affirmed.